### E. H. Taylor, Jr. & Sons, et al. v. Thornton, et al.
(Decided December 21, 1917.)

#### On Plaintiff's Motion to Reinstate Injunction.

1. Witnesses — Depositions — Production of Books and Papers — Notary Without Power to Compel—Contempt.—The Civil Code, section 591, does not confer upon a county judge, justice of the peace or notary public who may be commissioned under its provisions by the court of another state to take depositions in this state to be used in an action or other judicial proceedings in such other state, any power to compel by the process known as subpoena duces tecum the production of books or papers by a witness. The section treats exclusively of the taking of depositions of witnesses and confers on the officer authorized to take the depositions only such powers as will compel the attendance of the witnesses and the giving of depositions by them. The only kind of subpoena that can be issued by such officer is the subpoena ad testificandum, and for the failure of the witness to attend before him in obedience to such subpoena, or his refusal to be sworn or

to testify, the witness may by the county judge, justice of the peace, or notary public be declared guilty of contempt and punished for such contempt as prescribed by section 591.

2. Witnesses—Depositions—Subpoena Duces Tecum — How Issued. —The subpoena duces tecum is a writ which, though in form not unlike the subpoena ad testificandum, must, in addition, include a command requiring the witness to bring with him and produce to the court books, papers, etc., in his hands tending to elucidate the matter in issue. The subpoena ad testificandum which merely commands the personal attendance and giving of testimony of the witness is issued, as a matter of right to the applicant, by the clerk of the court in which the testimony of the witness is required in an action therein pending, but if the attendance of the witness be required for the taking of his deposition, the subpoena is issued by the ministerial officer before whom the deposition is taken. The subpoena duces tecum, however, is never issued without an order of the court, or the judge thereof, in which the action is pending, which power has always been exercised by the courts of this state under authority of the common law, but is now expressly conferred by Civil Code, section 528, which is but declaratory of the common law, the provisions of which expressly confine the authority to issue the subpoena duces tecum to the court in which the action requiring such subpoena is pending, or to the judge of such court.

3. Evidence—Production of Books and Papers.—The court of a foreign state is without jurisdiction to make or enter an order requiring the issuance of a subpoena duces tecum by a judicial or ministerial officer of this state requiring the production of books, papers or other thing intended for use as evidence in an action pending in such foreign court.

4. Witnesses—Production of Books and Papers—Contempt—Notary Without Power to Punish.—A notary public authorized by a commission from the court of another state to take depositions in this state for use in an action pending in such court, being without authority to issue a subpoena duces tecum compelling a witness to produce before such notary books or documents for inspection or as evidence, his action declaring such witness in contempt for refusing to produce the books or documents, and attempting to punish him therefor, was illegal and void; nor can such action of the notary be given any legal force or effect by any order that may be entered by the judge of the county court in approval thereof.

5. Injunction—Production of Books and Papers—Notary Enjoined From Compelling.—As such action on the part of the notary public and county judge in this state was unauthorized and, therefore, void, the enforcement of any order made by them, or either of them, in regard thereto may be prevented by injunction issued by the circuit court of the county in which such action was taken.

E. C. O'REAR and HAZELRIGG & HAZELRIGG for plaintiffs.

J. P. HOBSON and WM. MARSHALL BULLITT for defendants.

OPINION BY CHIEF JUSTICE SETTLE—Reinstating injunction.

In this action, pending on the equity docket of the Franklin circuit court, the plaintiffs, E. H. Taylor, Jr., & Sons, a corporation engaged in the manufacture and sale of whiskey, and W. S. Sandifer, its secretary and book-keeper, in the absence from the county of the judge of the Franklin circuit court, after due notice to the opposing parties and the execution of the required bond, obtained at the hands of the clerk of that court an injunction restraining the defendants, Sterling B. Thornton, notary public; R. C. Hieatt, county judge, and M. B. Lucas, jailer, all officers of Franklin county, in the respective capacities indicated, from enforcing an order entered by Thornton as notary public, approved by Hieatt as county judge, and attempted to be executed by Lucas as jailer, declaring the plaintiff Sandifer guilty of contempt, and, by way of punishment therefor, inflicting upon him a fine of $30.00 and twenty-four hours' imprisonment in jail, because of his refusal to produce before Thornton as notary public, in obedience to a subpoena *duces tecum* issued by the latter, certain books and papers in his custody belonging to E. H. Taylor, Jr., & Sons, for the inspection of the attorneys of Julius Levin Co., and use, together with the deposition of Sandifer then being taken, as evidence in behalf of Julius Levin Co., in an action pending in a court of the state of California, wherein that company is the plaintiff and Sherwood and Sherwood are defendants. After the granting of the injunction by the circuit clerk the defendants, Thornton, Hieatt and Lucas, following the service upon plaintiffs of a notice to that effect, entered before the Honorable Robert L. Stout, judge of the Franklin circuit court, a motion to dissolve it, which motion was sustained and the injunction dissolved by Judge Stout. The case is now before me as a judge of the Court of Appeals upon the motion of the plaintiffs to reinstate the injunction thus dissolved by the circuit judge. Judges Miller, Carroll, Hurt, Thomas and Clarke were associated with me in the careful consideration given the case and all concur in the conclusions set forth in the opinion. Judge Sampson, being necessarily absent when the case was considered, did not participate in its decision.

It is alleged in the petition that the Julius Levin Co., a corporation engaged in the wholesale liquor business and having its chief office in the city of San Francisco,

California, was for several years the agent for the plaintiff, E. H. Taylor, Jr., & Sons, for the selling of its product known as "Old Taylor" whiskey to the trade in California, and certain other contiguous territory; but that in February, 1917, upon being advised by the Federal authorities that the Julius Levin Co. had been made to close their business on account of alleged violations of the revenue laws of the United States, E. H. Taylor, Jr., & Sons, discharged the Julius Levin Co. as its agent and withdrew its patronage from it; and at the same time or shortly thereafter, constituted Sherwood & Sherwood, an incorporated wholesale liquor company of California, its sales agent for the same territory; following whose appointment the Julius Levin Co. brought in the superior court of San Francisco county, state of California, the suit against Sherwood & Sherwood previously mentioned, setting up claim to seven thousand barrels of whiskey in the bonded warehouse of E. H. Taylor, Jr., & Sons, in Woodford county, Kentucky, for which the latter had executed provisional warehouse certificates or receipts, which had, however, been redelivered to it. Of this whiskey the Julius Levin Co. claimed to be the owner by purchase from E. H. Taylor, Jr., & Sons, and its recovery was sought of Sherwood & Sherwood upon the alleged ground of its wrongful conversion by the latter.

It is further alleged in the petition herein that though the taking by Julius Levin Co. of the deposition of the plaintiff, Sandifer, and its attempt to thereby obtain an inspection of the books of E. H. Taylor, Jr., & Sons, was and is for the ostensible purpose of using the deposition and information obtained from the books in its action against Sherwood & Sherwood in the state of California, the real object of the Julius Levin Co. was to thereby obtain, if possible, information for use in an action it contemplates bringing against E. H. Taylor, Jr., & Sons, for an alleged breach by the latter of the agency contract it had with the Julius Levin Co.

It appears from other allegations of the petition that the deposition of Sandifer was taken by the defendant, Sterling B. Thornton, as notary public, under a commission issued by the California court in the case of Julius Levin Co. v. Sherwood & Sherwood, appointing him commissioner for that purpose, and also to take the depositions of various other witnesses in the same case. The commission thus received by him, Thornton produced before the defendant, R. C. Hieatt, judge of the Franklin county court, who thereupon issued a subpoena requiring

the witness Sandifer to appear before Thornton on November 7th to testify. Sandifer duly appeared and after being sworn by Thornton gave his deposition, in the course of which he testified, in reply to questions from counsel for Julius Levin Co., that E. H. Taylor, Jr., & Sons, had in the Frankfort office of the company a record of each barrel of whiskey it had ever manufactured, with the date of its manufacture and serial number of the barrel, date and serial number of each warehouse receipt issued for the whiskey; and the names of the persons to whom it was sold. Upon being asked whether the particular barrels of whiskey involved in the action between the Julius Levin Co. and Sherwood & Sherwood, manufactured by E. H. Taylor, Jr., & Sons, were now in their warehouse and whether they had been sold to Julius Levin Co. or to Sherwood & Sherwood, and where and in whose name the warehouse receipts therefor were at the time of giving the deposition, Sandifer replied that the records of E. H. Taylor, Jr., & Sons would show all of these facts, but that he could not answer the questions without looking at the records, which he declined to do. Thereupon, the commissioner, Thornton, adjudged him in contempt for refusing to give the information called for, and at the same time issued a subpoena *duces tecum* commanding Sandifer as secretary of E. H. Taylor, Jr., & Sons Co. to appear before him again the next morning, November 8th, and produce "the following books and records kept by E. H. Taylor, Jr., & Sons, viz., the ledger, journal, invoice book, and other books, records and papers, showing what barrels of whiskey manufactured by E. H. Taylor, Jr., & Sons in the years 1912-1917, both inclusive, and what warehouse receipts issued in respect thereto were sold by E. H. Taylor, Jr., & Sons to Julius Levin Co., and what of such barrels of whiskey and warehouse receipts were sold by E. H. Taylor, Jr., & Sons to Sherwood & Sherwood, and the dates of such sales, and the present ownership, location and possession of such whiskey and warehouse receipts; and also the gauger's record from 1912 to 1917, both inclusive, and such other books, papers or records, showing the serial number of and dates of manufacture of all barrels of whiskey produced by E. H. Taylor, Jr., & Sons during that period, and showing the serial numbers of the warehouse receipts issued by E. H. Taylor, Jr., & Sons with respect of such whiskey to be used as evidence on behalf of the plaintiff in the case of Julius Levin Co. against Sherwood & Sherwood, pending in the superior court

of California, in and for the city and county of San
Francisco, and to give his deposition in said case pursu-
ant to a commission issued to me by said court.''

Sandifer appeared the next morning, but failed and
refused to produce any of the books, records or papers
called for by the subpoena. Whereupon Thornton de-
clared Sandifer in contempt and imposed upon him as
punishment therefor a fine of $30.00 and twenty-four
hours in jail; and immediately made to the county judge,
Hieatt, a written report of the testimony of Sandifer, his
action in adjudging him guilty of contempt and in fixing
his punishment for same, and the reasons therefor. The
county judge approved the action of Thornton, declared
Sandifer in contempt, and directed him to produce the
books and documents called for on November 10th,
in default of which he should be fined and impris-
oned. Although Sandifer again appeared before Com-
missioner Thornton on November 10th as directed by the
order of the county judge, he still refused to produce the
books, records and papers required of him by the order;
thereupon Thornton again declared him guilty of con-
tempt, fined him $30.00 and inflicted twenty-four hours'
imprisonment upon him, of which he again made a written
report to the county judge.

Upon receiving this report, the county judge made the
following order, which was not, however, entered upon the
records of his court:

"The witness, W. S. Sandifer, appearing and still de-
clining to produce the books and papers described in the
subpoena *duces tecum* entered herein, it is now ordered
and adjudged that a fine of $30.00 be and the same is im-
posed upon him, and further that he be imprisoned for
twenty-four hours in the county jail of Franklin county,
and the said Sandifer is now committed to the custody
of the jailer in said county in satisfaction of this judg-
ment.''

As previously stated, the enforcement of this order
was prevented by the injunction issued by the clerk of the
circuit court.

The single question to be decided upon the record be-
fore us is, had the defendant, Sterling B. Thornton, as
commissioner or notary public or County Judge Hieatt,
the power, by subpoena *duces tecum*, to compel the wit-
ness, Sandifer, to produce the books and papers spe-
cifically described in the subpoena?

The right of these officers to compel the production by Sandifer of the books and papers of E. H. Taylor, Jr., & Sons is mainly rested by counsel of the Levin Co. on the provisions of section 591, Civil Code, which section is as follows:

"A party desiring to take depositions in this state to be used in judicial proceedings in other states, may produce to a judge of the county court of the county where the witnesses reside a commission authorizing the taking of such depositions or a notice duly served; whereupon it shall be the duty of the judge to issue a subpoena requiring the witnesses to attend at a specified time and place for examination, and, in case of their failure to attend or refusal to be sworn or to testify they may be punished as is provided in section 538. (By similar proceedings before an examiner, justice of the peace or a notary public, depositions may be taken by such officers in this state to be used in judicial proceedings in other states; and the officer so taking such depositions shall have the same powers in taking the same as judges of the county courts now have; but in cases of contempt and the infliction of punishment for the same, or a failure upon the part of the officer to punish for contempt, then it shall be the duty of the officer, upon the motion of the witness or either party to the suit, to promptly, in writing report his actions and the reasons therefor to the judge of the county court for the county in which the deposition is being taken; and the court may change, modify or vacate the order of the officer, and shall render judgment for the fine imposed by the officer or by himself, and he shall, in accordance with the judgment rendered, certify to the officer what further steps shall be taken.)"

The words in parentheses appearing in the section were added thereto by an amendatory act of 1884. The object of this amendment was to confer upon justices of the peace and notaries public of this state the same authority and power to take depositions for use in judicial proceedings in other states, when commissioned so to do, that had been conferred by section 591, as originally enacted, upon county judges alone, except that in case of the failure of a witness to appear when subpoenaed or of his refusal to be sworn or to testify, in order to punish the witness for such contempt, it is, by the section as amended, made the duty of the justice of the peace or notary public taking the deposition to report, in writing to the judge of the county court for the county in which the deposition is being taken, his action in declaring the recalcitrant witness

in contempt, the punishment intended to be inflicted for the contempt, and the reasons for the action taken by him. Upon receiving the report the county judge may change, modify or vacate the order of the officer (justice or notary) and shall render judgment for the fine imposed by the officer, or by himself, and at the same time certify to the officer what further steps shall be taken.

It is manifest that the section, *supra,* does not confer upon the county judge, justice of the peace or notary public who may be commissioned under its provisions to take depositions to be used in an action or other judicial proceeding in another state, any power to compel by the writ known as the subpoena *duces tecum* the production of books or papers by a witness. The section treats exclusively of the taking of depositions of witnesses and confers on the officer authorized to take the depositions such power as will compel the attendance of the witnesses and the giving of their depositions. Among the powers enumerated by the section, because essential to the accomplishment of the end in view, is authority to the officer taking the depositions to punish, as for contempt, a witness who fails to attend, in obedience to a subpoena, at the time and place fixed for taking his deposition; or who, though in attendance, refuses to be sworn or to testify. The only kind of subpoena mentioned in section 591 is the ordinary subpoena technically called a subpoena *ad testificandum,* which is "a process to cause a witness to appear and give testimony. . . . before a court or magistrate therein named, at a time therein mentioned, to testify for the party named under a penalty therein mentioned." The subpoena *duces tecum* is a writ which, though in form not unlike the subpoena *ad testificandum,* must include a clause or command "requiring the witness to bring with him and produce to the court books, papers, etc., in his hands tending to elucidate the matter in issue." The subpoena *duces tecum* is not named in the section, *supra,* and as it is never named without the intention to give it its technical meaning and to distinguish it from the ordinary subpoena employed alone for the attendance of a witness, there is no ground for saying that the authority given by the section to the officer taking the depositions, to "issue a subpoena requiring the witness to attend at a specified time and place, etc." can be held to confer authority upon him to issue a subpoena *duces tecum.*

While a notary public, commissioned as was the defendant, Thornton, to take depositions in this state in

behalf of the Levin Co. for use in a court of California, may, in the performance of that work, employ the same powers given by section 591 to county judges, he certainly cannot extend the powers of the county judge himself; and, as we have seen, the authority of the county judge under that section is, in the particular under discussion, confined to the power to issue a subpoena requiring the witness to attend at a specified time and place for examination. The only contempt for which either a county judge or notary public can inflict punishment under the provisions of section 591 would be a contempt resulting from the failure of the witness to attend at the time and place specified by the subpoena for examination, or from his refusal to be sworn or to testify; and as Sandifer did, in obedience to the subpoena, attend at the time and place specified therein for giving his deposition and was sworn and did give his deposition, he could not have been guilty of a contempt for which Thornton or the county judge was authorized to inflict punishment.

In this jurisdiction a subpoena *duces tecum* is never issued without an order of the court. It has, however, always been the rule that the subpoena commanding the personal attendance and giving of the testimony of the witness be issued, as a matter of right to the applicant, by the clerk of the court if the testimony of the witness is required in an action pending in court, but if the attendance of the witness is required for the purpose of taking his deposition, the subpoena is issued by the ministerial officer before whom the deposition is taken. The subpoena *duces tecum* has for time out of mind been issued only upon order of the court, or the judge of the court; that is, by the court in which the action is pending, or the judge thereof. This is clearly shown by the provisions of Civil Code, section 528, which are as follows:

"(Subpoena defined—Subpoena *duces tecum*—Court may direct issual of.)

"The process by which the attendance of a witness is required is a subpoena. It is a writ directed to the sheriff requiring him to summon the person named therein to attend at a particular time and place, to testify as a witness. It may, when the court or the judge thereof so directs, requires the witness to bring with him any book, writing or other thing, under his control, which he is bound by law to produce in evidence."

It is not the object of this section to create new writs or even define process, but to approve and adopt certain

common law process long in existence, and to maintain the distinction, almost as ancient as the origin of the common law, between the subpoena *ad testificandum* and the subpoena *duces tecum.* The first commanding the attendance of the person and the giving of his testimony; the other the production of books, papers or other things. The fact that the subpoena *duces tecum* in some sort carries with it the right of search and seizure of papers so abhorrent to all English-speaking peoples, may, as argued by counsel for plaintiffs, have caused the lawmaking power to provide as a safeguard against its abuse, that the process should not be issued, unless ordered by the court or the judge thereof. Be that as it may, certain it is, that this safeguard has long existed and no reason is now apparent for its discontinuance.

It is also patent from the language of section 528 that the order granting the subpoena *duces tecum* must be made by the court or judge having jurisdiction of the pending action in which the books, papers or other thing sought to be produced through the process is to be used as evidence. This must be so, as that court, or the judge thereof, is best qualified to understand the competency of the evidence that may be furnished by the books or other documents proposed to be produced. In this way the exposure of books and papers not competent as evidence would be less likely to be allowed.

While it is true the order for the subpoena *duces tecum* desired by the Julius Levin Co. could not be made by the California court, entertaining the pending action in which the evidence attempted to be obtained by the production of the books of E. H. Taylor, Jr., & Sons is expected to be used, because the court of a foreign state is without jurisdiction to make such an order operative in this state, it does not follow, as claimed by defendants' counsel, that the reinstatement of the injunction in the instant case would leave the Levin Co. without remedy. It seems to have been held in Marion Nat. Bank v. Abell's Admr., 88 Ky. 429, that such a remedy may be afforded by a bill of discovery filed in a court of this state having jurisdiction of the parties, upon a sufficient showing of such right or interest of the plaintiff in such action to the books or documents demanded, as would authorize the court to compel their production by the owner or custodian.

The contention of the defendants that the injunction in this case was properly dissolved, because not granted by a court in which the judgment sought to be enjoined

was rendered, as required by section 285, Civil Code, is without merit. The order of the commissioner and that of the county judge approving the action of the commissioner in declaring Sandifer guilty of contempt and fixing his punishment, is not a judgment and was never entered upon the records of any court as such, or required by the law to be so entered. In this action taken both by the commissioner and county judge, neither of them exercised a judicial function, but each acted in a ministerial capacity; hence the provisions of section 285 of the code are inapplicable. For yet another reason that section cannot be made to apply. As we have already seen, the action of the commissioner and county judge in holding Sandifer guilty of contempt and attempting to punish him therefor was unauthorized and, therefore, void, the orders made by them with respect thereto, even if they could be called judgments or a judgment, were and are void, and for that reason subject to collateral attack. We have repeatedly held that if a court in which an assailed judgment was rendered, was without jurisdiction, the enforcement of such judgment might be prevented by an injunction obtained in another court. Boyd v. Board of Councilmen, 117 Ky. 199; Combs v. Sewell, 22 R. 1026; Willis v. Tomes, 141 Ky. 431; Robinson v. Carleton, 123 Ky. 419.

The question whether the evidence attempted to be obtained by the Julius Levin Co. from the books and papers of E. H. Taylor, Jr., & Sons, would be competent or relevant upon the issues involved in the action of the former against Sherwood & Sherwood pending in the California court, is not before us for decision, and is not, therefore, decided.

For the reasons indicated, the motion of the plaintiffs, E. H. Taylor, Jr., & Sons, and Sandifer, to reinstate the injunction dissolved by Circuit Judge Stout is sustained and the injunction reinstated.

Whole court sitting, except Judge Sampson.