In the Matter of EWING B. HAWKINS.

*(February* 3, 1956.)

CAREY, J., sitting.

*Morris Cohen* (of Cohen and Cohen) for the petitioner.

*Joseph Donald Craven,* Attorney-General, and *Wilfred J. Smith, Jr.,* Deputy Attorney-General, for the State.

Superior Court for New Castle County, No. 206, Cr. A., 1955.

**CAREY, J.:**

The motion to quash contains four reasons in support of the relief requested. In essence, they present two questions for decision. The first question is whether the quoted statute confers upon the Attorney General the power to require production of documents or objects. The second is whether the subpoena is defective on its face in failing to state in what inquiry or for what purpose production of the objects is demanded.

As to the first of these questions, petitioner argues that the Attorney General had no common law power to issue subpoenas, that his power in that respect is created and governed solely by the statute quoted above, that the statute must be interpreted strictly, and, since it contains no express language permitting the requisition of objects, the legislative intent was not to confer that power. He relies principally upon *Ex parte Moses, C. C.*, 53 F. 346; *E. H. Taylor, Jr. & Sons v. Thornton*, 178 *Ky.* 463, 199 *S. W.* 40; *Commonwealth ex rel. Margiotti v. Orsini*, 368 *Pa.* 259, 81 *A.* 2d 891; and *Hirshfield v. Craig*, 239 *N. Y.* 98, 145 *N. E.* 816. The *Moses* case was followed in *In re Outcault, C. C.*, 149 F. 228, and *Janssen v. Belding-Corticelli*, 3 *Cir.*, 84 *F.* 2d 577.

The *Orsini* case is of little help here except to demonstrate the strictness with which the Pennsylvania court construed its statute. In the other cases cited, the courts found language in the statutes which, by the rule of exclusion, showed a legislative intent to restrict the Attorney General's power. For example, in the *Hirshfield* case, it was held that statutory power to "subpoena" a "book or paper" did not include authority to require production of cash or samples of granite. In most of the others the courts held that the use of the term "subpoena" or "subpoena *ad testificandum*" by definition excluded a subpoena *duces tecum*. On the other hand, the New Jersey court, in *Catty v. Brockelbank,* 124 *N. J. L.* 360, 12 *A.* 2d 128, held that a subpoena *ad testificandum* does not lose its identity simply by the addition of a *duces tecum* clause. This view seems to be supported by the remarks in 1 *Woolley on Delaware Practice* 410, and 2 *Tidd's Practice* 805-806. In my opinion, the cited cases are of little importance here because of significant differences in our statute. *In re Saperstein,* 30 *N. J. Super.* 373, 104 *A.* 2d 842, 844, is somewhat more relevant, since the statute there considered authorized the issuance of a " 'summons * * * directing the witness to attend and testify.' " The word summons, by another act, was defined as including a subpoena, order or other notice requiring the appearance of a witness. It was held that the act was sufficiently broad to authorize the issuance of a *duces tecum.*

[1]   Significantly, our act does not contain the word "subpoena". The term used is "process", which is limited to no one particular writ but is broad enough to include any type of writ or order which may be appropriate to enforce the provisions which follow. *Black's Law Dictionary* (3rd Ed.) 1432. The use of that general term rebuts any argument based upon a possible technical distinction between subpoenas or subpoenas *ad testificandum* on the one hand, and subpoenas *duces tecum* on the other. A more substantial argument could be predicated upon the words "to compel the attendance of witnesses", and the question here is whether that expression includes or excludes the right to direct those witnesses to produce books or objects.

. Upon careful analysis, it will be seen that these quoted words, if read literally without reference to the legislative intent, lead to an utterly ridiculous result. A witness could be compelled to come to the Attorney General's office, but he would not be obligated to answer any questions. Such an absurdity was obviously never intended. To give the statute any sensible meaning, we must imply the duty to testify from the duty to attend. If the Attorney General may require a witness to testify, what is there in the statute limiting that power to obtaining facts which are in the witness' mind? Certainly, no specific language therein suggests an intent so to restrict it. Moreover, the purpose of the act suggests a contrary intent.

This purpose is plain. In the absence of the statute, the Attorney General would have no direct access to evidence of third persons reluctant to reveal it, and could obtain it only by some type of court proceedings. No doubt this method was deemed inadequate from the State's point of view. Furthermore, because of a certain inevitable notoriety, it could easily prove unjustly embarrassing to private persons, who, though suspected of crime, are in fact innocent. The authority created is therefore, when judiciously exercised, beneficial both to the people as a whole and to private individuals.

I find nothing in the statute expressly forbidding the Attorney General to issue a *duces tecum*, and I see no reason to imply any such limitation. The act has been on our statute books in substantially its present form since 1873; nothing about its actual operation in practice has been sufficiently obnoxious as to cause the legislature to restrict its application; indeed, our reports reveal no instance where the authority has been abused. It should be pointed out, however, that the power is not without its limitations, and we would unhesitatingly quash a writ or grant other appropriate relief upon a showing of undue inconvenience, privilege, possible self-incrimination or other adequate cause. We also would doubtless refuse to punish a witness for declining to comply with the mandate of a writ for proper cause shown.

■ Petitioner's second objection is based upon the failure of this subpoena to show on its face the nature of the inquiry or the purpose of the demand. He cites the case of *Annenberg v. Roberts*, 333 *Pa.* 203, 2 *A.* 2d 612. There a statute authorized a very limited investigation and gave the right to compel production of records relating to the subject of that inquiry. The subpoena actually issued was held bad not merely because it failed to show that the demands were germane to the inquiry authorized, but also because it affirmatively showed on its face that it called for irrelevant information and contemplated an unreasonable search and seizure. The present situation is different. The Attorney General, so far as the record* discloses, is acting under his general powers of investigating possible crime, not under a specific grant of limited investigative authority. Moreover, the present subpoena contains nothing to suggest that the demand is unreasonable or burdensome, or that the objects sought are irrelevant to an authorized inquiry. Obviously, it would often be impossible to show on the face of a subpoena the particular crime or the name of the suspected person; even if it could be done, it might well be the means of making the investigation abortive, although any inconvenience to the witness might be slight. It is difficult to perceive how any statement not so particularized could be of any value to the witness. I see no reason to hold that the nature of the inquiry or the purpose of the demand must be stated on the face of the subpoena. If a witness, in a given case, needs such information for self-protection, there are adequate ways by which he can get it.

For the reasons stated, the petitioner's motion will be denied.

---

*The record consists only of the subpoena and the petition; statements of fact in the State's brief have been ignored.