Lacey *v.* Dobbs.

FANNIE E. LACEY et al., appellants,

*v.*

HARRIET M. DOBBS, respondent.

[Filed November 15th, 1901.]

The supplement of March 12th, 1851, to "An act concerning wills" (*Gen. Stat. p. 3760*) enacts "that all wills and testaments * * * shall be in writing, and shall be signed by the testator, which signature shall be made by the testator, or the making thereof acknowledged by him, and such writing declared to be his last will, in presence of two witnesses present at the same time, who shall subscribe their names thereto as witnesses in the presence of the testator."—*Held*, that it is essential to validity that everything required to be done by the testator shall precede in point of time the subscription of the witnesses.

On appeal from a decree of the prerogative court affirming the probate, in Essex county orphans court, of the will of Mary Ann Caldwell. The opinion of the ordinary is reported in *16 Dick. Ch. Rep. 575.*

*Mr. Addison Ely,* and *Mr. William H. Ely* (of the New York bar), for the appellants.

*Mr. Alexander Grant* and *Mr. Harry F. Barrell,* for the respondent.

The opinion of the court was delivered by

COLLINS, J.

The orphans court of Essex county admitted to probate as the last will and testament of Mary Ann Caldwell, deceased, a paper-writing, her signature to which was proved to have been made after the subscription of the putative testamentary witnesses, although on the same occasion and while they were still present.

Upon affirmance in the prerogative court, by the decree that is the subject of the present appeal, the learned chancellor, sitting as ordinary, was largely influenced, if not controlled, by a deliverance in that court in 1858, in the case of *Mundy* v. *Mundy, 2 McCarl. 290,* to the effect that the order of signing was not material to the validity of a will. The question has been directly involved in no other reported case in this state.

The first section of the supplement, approved March 12th, 1851, to "An act concerning wills" (*Gen. Stat. p. 3760*), upon which all valid wills must rest, reads as follows:

"All wills and testaments of persons dying after this act shall take effect, or who may have died since the fourth day of July, in the year of our Lord eighteen hundred and fifty, shall be in writing, and shall be signed by the testator, which signature shall be made by the testator, or the making thereof acknowledged by him, and such writing declared to be his last will in presence of two witnesses present at the same time, who shall subscribe their names thereto as witnesses in the presence of the testator; and all wills and testaments of persons dying since the day above mentioned, made in manner prescribed, by any person competent by law to make such will, shall be sufficient to devise, pass and bequeath all estates and property, real or personal, and all rights of any kind, and to appoint a guardian or guardians to any child of the testator during infancy."

The grammatical sense of this enactment is that the entire testamentary act is to be attested by two witnesses, by the subscription of their names. They are to subscribe "*as* witnesses"— *i. e.,* as those who know (Saxon witan) what was said and done. They cannot know before the fact. But the apparent meaning of words must yield to authoritative judicial construction; and a judgment of the prerogative court, of long standing, although not binding in this court, should not lightly be overruled. Hence some elaboration seems proper in vindicating a determination contrary to the deliverance mentioned—the more so because of confusing adjudications elsewhere.

It will be found upon examination of the case cited that such deliverance was an ill-considered make-weight for a decision previously placed on a sound basis with which it was really inconsistent. The decree was mainly and rightly vested on the evidential force of the attestation signed by the testamentary

witnesses. It was said: "The attestation clause, with the signatures of the witnesses, is *prima facie* evidence of the facts stated in it. It may be overcome by the witnesses themselves, or by other witnesses, or by facts and circumstances irreconcilable with its verity. If there is no attestation clause the case is different. In the one case there must be affirmative proof of publication and of the other requisites; in the other there must be affirmative proof of the want of those requirements." In *Allaire* v. *Allaire, 8 Vr. 312,* the present chief-justice, speaking for the supreme court, said that the true principle had been so declared with exactness; and in *Allaire* v. *Allaire, 10 Vr. 113,* this court held that the legal rule was thus properly settled. But not content with this firm ground of decision, the learned ordinary, evidently without scrutiny of the statute, and without that careful consideration almost always displayed in his judicial utterances, went on thus to support it: "Mrs. Manning at one time says that she thinks her husband [one of the testamentary witnesses] signed before the testator. If the fact was clearly proved, it would not affect the validity of the will. The particular order of the several requisites to the valid execution of a testament is not at all material. *Vaughan* v. *Burford, 3 Bradf. Surr. 78."* This is most unsatisfactory. The order of the requisites to the *execution* of a will *is* not material. The testator may declare the "writing" to be his will before or after or contemporaneously with the making or acknowledging of the signature, but attestation is a different matter. Of course the word "execution" was used—though inaptly—to include the subscription of the witnesses, and the New York surrogate's decision, on which too hasty reliance was placed, was to the effect stated, upon a New York statute like our own. That decision has since been repudiated by the court of appeals, and it is strange that so acute a reasoner as the writer of the opinion in *Mundy* v. *Mundy* should not have seen the inconsistency of antecedent subscription of witnesses with his declared rule that "the attestation clause, with the signature of witnesses, is *prima facie* evidence of the facts stated in it." One of those facts must be the making or acknowledging of the testator's signature. The attestation clause, he had said, can only be over-

come by proof irreconcilable with its verity. When signed, therefore, in order to have such a probative force it must be *true.* The rule necessarily interprets the statute.

The rationale of the rule was very clearly stated by Vice-Ordinary Van Fleet in *Farley* v. *Farley, 5 Dick. Ch. Rep. 434, 439.* He said that an attestation clause is "for the very purpose of preserving in permanent form a record of the facts attending the execution of the will, so that, in case of the failure of memory, or other casualty, they may still be proved. It is for this reason that the courts have uniformly held that, on proof of the authenticity of the signatures of the subscribing witnesses, the facts stated in the attestation clause must be considered and accepted as true until it is shown by affirmative proof that they are not." The late chancellor, sitting as ordinary, in *Darnell* v. *Buzby, 5 Dick. Ch. Rep. 725, 727,* tersely said: "The attestation clause recites particulars which assert complete obedience to all the requirements of the statute, and the signature of the witnesses being admitted, that clause makes *prima facie* proof of all the facts stated in it."

If it be urged, as indeed it has been in some of the cases, that the legal presumption raised by the attestation clause is an arbitrary one, because the witness first subscribing cannot, in the nature of things, attest that the other subscribes in the testator's presence, the answer is that, in this regard, all that is required by the statute is that each witness shall so subscribe. The attestation is not joint, but several, and the witness subscribing does not attest the signature, but only the presence of his colleague.

To the argument that, as like effect is given to an attestation clause by those courts that hold the order of signing to be immaterial, it is at least disputable that such rule of evidence is inconsistent with that laxity, it is sufficient to reply that in any case all that need be atttested is that for which the particular statute involved requires the presence of witnesses, and that no court has yet held that attestation can precede the testator's signature where the statute construed requires, in terms, as does ours, the making or acknowledging of such signature to be in the presence of the testamentary witnesses.

Before proceeding to consider direct adjudications on the question *sub judice*, it will be necessary to present the state of the law on the subject of wills at the time of the enactment of our present statute.

Testaments of personalty were, in England, until the reign of Victoria, left to the ecclesiastical courts unaffected by legislation. Devises of lands were *sub temp. Hen. VIII.* required, by act of parliament, to be in writing, but no formalities or attestation were prescribed. The statute of frauds of *29 Car. II. c. 3* § *5*, provided that such devises

"shall be in writing and signed by the party so devising the same, or by some other person in his presence and by his express directions, and shall be attested and subscribed, in the presence of the said devisor, by three or four credible witnesses, or else they shall be utterly void and of no effect."

This statute inherently prevailed or was, in substance, enacted in the American colonies and the states of the union, many of whom extended its provisions to testaments of personalty. In New Jersey a change, in phraseology at least, was made. In 1713–1714 it was enacted that

"all wills and testaments which hereafter shall be made in writing, signed and published by the testator in presence of three subscribing witnesses and regularly proved, &c., * * * shall be deemed sufficient to devise lands." *Allin. L. p. 27.*

This statute survived the Revolution. In *Compton* v. *Mitton, 7 Halst. 70,* decided in 1827, Chief-Justice Ewing called attention to the difference between it and the English statute of frauds. He said: "Under both, wills are to be in writing, to be signed and have at least three witnesses. Our act requires the will to be published, which is not expressly directed by the other. By the English statute the will is to be signed. By our act the will is to be signed and published in the presence of witnesses. By the former the witnesses are to attest and subscribe in the presence of the devisor. By the latter they are not, in terms, required so to do, although it is our usual and commendable custom."

Like other provisions of the statute of frauds, its fifth section

was very loosely construed, and to remove the consequent uncertainty, as well as to bring testaments of personalty into uniformity with devises of land, "An act for the amendment of the laws with respect to wills" was passed by parliament, taking effect on July 3d, 1837. *1 Vict. c. 26.* By section 9 it was enacted that

"no will shall be valid unless it shall be in writing and executed in manner hereinafter mentioned (that is to say) it shall be signed at the foot or end thereof by the testator or by some other person in his presence, and by his direction, and such signature shall be made or acknowledged by the testator in the presence of two or more witnesses present at the same time, and such witnesses shall attest and shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary."

This statute soon came before the ecclesiastical courts, and in 1842 was carefully considered by Sir Herbert Jenner-Fust in the prerogative court of Canterbury. *Moore* v. *King, 3 Curt. 243.* The great importance of the case as a leading one was perceived and expressed—the previous interpretations, though of the same tenor, having been *ex parte. Re Goods of Olding, 2 Curt. 865; Re Goods of Byrd, 3 Curt. 117.* These were the facts: The testator signed the draft of his will in the presence of his sister, who subscribed her name as a witness. On the next day he acknowledged his signature, in her presence and in the presence of another person, to whom the sister pointed out her signature, and who then subscribed as a witness. The will was held invalid for lack of conformity to the statute. It was observed that the new legislation was amendatory, and, in fact, had grown out of the loose construction that had been given to the statute of frauds, and the judge said: "I clearly find that the object of this act is to remove every possible doubt, thereby taking away all latitude and discretion in its interpretation." He declared his opinion that "the act is not complied with unless both witnesses shall attest and subscribe *after* the testator's signature shall have been made or acknowledged to them when both are actually present at the same time." He pointed out that the alternative of acknowledgment of the testator's signature, expressly given by the act, precludes any implication that the witnesses might acknowledge their signatures

Lacey *v.* Dobbs.

previously made. The same learned judge reaffirmed his opinion the next year, in *Cooper* v. *Bockett, 3 Curl. 648,* in a case where the testator signed on the same occasion as the witnesses, but after they had signed.

No English court has ever held that the statute of frauds permitted subscription of testamentary witnesses in advance of the testator's signature. When parliament passed the amendatory act such an anomaly had never, in any adjudged case, been presented or suggested. But in this country, before the New Jersey legislature acted finally in the premises, the subject had been judicially considered. In Kentucky, the statute of 1797 required that wills should be

"signed by the testator or testatrix or by some other person in his or her presence and by his or her direction ; and, moreover, if not wholly written by himself or herself, be attested by two or more competent witnesses subscribing their names in his or her presence."

A will was drawn for a testator, and while still unsigned by him, was subscribed in his presence by two persons as if witnesses. Some hours later he signed it in their presence and in the presence of a third witness, who subscribed it, the first two, at the same time, acknowledging their subscription. In 1840 this will was established as valid by the supreme court of the state. *Swift* v. *Wiley, 1 B. Mon. 114.* A distinction was drawn between attestation and subscription. The judge said that subscription was required "for the sole purpose of identification." This was a misconception, for attestation of a will involves subscription, and there is a better argument in favor of the decision which I will later suggest. Under a statute practically identical with that of Kentucky, the supreme court of appeals of Virginia in 1849 held, *obiter,* that the order of signing as between testator and witnesses was not material. *Rosser* v. *Franklin, 6 Gratt. 1.* The signature of an illiterate testatrix had been written for her before the witnesses subscribed and the occasion of the *dictum* was her subsequently making her mark.

It will be observed that neither in the English statute of frauds nor in these American derivatives is it required that the testator's *signature* shall be made or acknowledged in the pres-

ence of the witnesses, and that under each statute it is the *will* that is the written disposition of the testator's property—not its due execution, that, in terms, is to be attested. It is consistent with such legislation that the writing shall be declared to be the will of the testator, although his signature be not shown to the witnesses; and if, when probate is moved or the will in anywise comes in controversy, the true signature of the testator appears upon the attested document it may be fairly arguable there has been compliance with the law. In the old case of *Peale* v. *Ougly, Com. 197,* a jury was permitted to inquire of the due execution of a will which was so folded when the witnesses subscribed it that they could not know whether or not it was signed, and a verdict for the will was sustained. This would have been impossible under *1 Vict. c. 26,* and the precise case did, in fact, in 1844, arise under that statute. *Hudson* v. *Parker, 1 Rob. Eccl. 14.* The proof was that the witnesses had subscribed, in presence of an ostensible testator and each other, a paper on which the writing was concealed. The testator said it was his will, but did not show any signature. After his death his proper signature appeared at the end of the paper. Dr. Lushington, in an elaborate opinion distinguishing the Victorian statute from the statute of frauds, held the paper invalid as a will.

In this situation and with the same purposes that moved the British parliament in 1837, the New Jersey legislature proceeded to deal with the general subject of wills. By an act approved March 7th, 1850 (*P. L. of 1850 p. 280*), it was provided that

"all last wills and testaments of persons dying after this act shall take effect shall be in writing and shall be signed or acknowledged to have been signed by the testator and declared to be his or her last will in the presence of at least two credible witnesses, present at the same time, who shall subscribe their names thereto as witnesses in the presence of the testator."

A year later the statute first above quoted and still extant was substituted. The main purpose of the change was to more clearly express the requirement that the *signature* of the testator must be made or acknowledged by him in the presence of

the witnesses, and to declare in terms that the provisions of the act should extend to personal as well as real estate. The substantial identity of much of the language used with that of the English statute of 1837 makes it indisputable that the one was the model for the other. Ours is the more stringent, if there be any difference in the forms of expression. I will not say that the interpretation of the English courts of several years' standing at the time of New Jersey's adoption of the English act should be read into our statute; it is enough to say that such interpretation is highly persuasive. The previous rendition of the Kentucky and Virginia decisions furnishes another argument in that direction. It should not be lost sight of that since 1714 our law had required wills devising lands to be *signed* as well as published in presence of *subscribing* witnesses. In that respect the new statute was an enlargement, for it permitted a signature previously made to be acknowledged by the testator.

It was suggested by the learned ordinary in the court below, in this case, that there may be a difference in the effect of the two amendatory statutes, in that the English one does, while ours does not, require the witnesses to attest as well as to subscribe the will. It being expressly provided in the English act that no *form* of attestation shall be necessary, it is evident that what is meant is that the witnesses shall subscribe *"as witnesses,"* which is the concise direction of our act, accordant with the usual definition by lexicographers of the word "attest" as applied to writings.

All the later English cases approve the view of Sir Herbert Jenner-Fust. It is unnecessary to cite them. The question finally reached the house of lords in 1861, and was there definitely settled in *Hindmarsh* v. *Charlton, 8 H. L. Cas. 160,* affirming Sir Creswell Creswell, in the new court of probate and divorce. *Charlton* v. *Hindmarsh, 1 Swab. & T. 433.* Briefly stated, the case was this: Hindmarsh produced to Dr. Wilson, a surgeon attending him in illness, a paper-writing, which he then signed and said was his will, and asked the surgeon to subscribe as a witness. Dr. Wilson wrote "witness to the above will and testament, and signature," and signed his name, inad-

vertently omitting to cross a capital F, so that it stood as a T. Later in the day Dr. White, the physician in regular attendance, called, and there was a medical consultation. Dr. Wilson had previously told Hindmarsh that there ought to be another witness to the will, and, after the consultation, both doctors went into the sick-room, taking it with them. Hindmarsh then acknowledged his signature and Dr. White subscribed his name as a witness. Dr. Wilson, noticing that the F in his name lacked a cross, supplied one, and, at Dr. White's suggestion, added the date. It was held that, in order to comply with the statute, "the signature or acknowledgment of the testator must be made in the presence of two witnesses, present at the time, and they must, after he has so signed, or so acknowledged, his signature, subscribe the will in his presence;" and that a correction of an error in a previous writing of the name of a witness, or his acknowledgment of his signature, or the adding of a date, will not be sufficient. The lord-chancellor (Campbell) and Lords Granworth and Chelmsford gave concurring opinions, each expressing regret that the stability of the law required the court to deny effect to a meritorious disposition of property in a case where there was a plain, but abortive, attempt to comply therewith.

The American decisions defending subscription by testamentary witnesses in advance of a signing by or for the testator that have been rendered since the enactment of the New Jersey statute of 1851 rest on legislation much less restrictive than that. In *Miller* v. *McNeill, 35 Pa. St. 217,* often cited, what was said on the subject was entirely gratuitous, for, under the Pennsylvania statutes, such subscription is supererogatory. *Hight* v. *Wilson, 1 Dall. 94; Rohrer* v. *Stehman, 1 Watts 463; Frew* v. *Clarke, 80 Pa. St. 170, 178.* The act requires only that

"every will shall be in writing, and, unless the person making the same shall be prevented by the extremity of his last sickness, shall be signed by him at the end thereof or by some person in his presence and by his express direction, and in all cases shall be proved by the oaths or affirmations of two or more competent witnesses; and otherwise shall be of no effect."

Of course, persons actually witnessing the testamentary act are not debarred from proving it by having prematurely subscribed their names to the will. In the case cited, Woodward, J., said: "Our statute contemplates, undoubtedly, a signing by testator, and then a signing by witnesses in attestation of that signature, when witnesses subscribe at all; but where a transaction consists of several parts, all of which occur at the same moment, and in the same presence, are we required to undo it because they did not occur in the orderly succession which the law contemplates? The execution and attestation of the will were concurrent, or rather simultaneous acts and we will not regard the question of who held the pen first, the testator or his witnesses." I have quoted this *dictum* because it carries its own refutation and makes strongly for the contrary decision where a statute not only "contemplates," but *directs* an orderly succession of acts.

The other cases are four in number, viz., *O'Brien* v. *Galagher, 25 Conn. 229; Moale* v. *Cutting, 59 Md. 510; Kaufman* v. *Caughman, 49 So. Car. 159,* and *Gibson* v. *Nelson, 181 Ill. 122.*

Except as to Illinois, all the statutes involved closely follow the language of the English statute of frauds; in those of Connecticut and South Carolina there being the additional requirement that the witnesses shall subscribe in the presence of each other. These cases are not helpful in interpreting our statute, and indeed, in the South Carolina case, the learned judge rests the court's decision on the elasticity of the statutes construed. After noticing that, under *1 Vict. c. 26,* the English courts hold that the signature, or acknowledgment of signature, of the testator must precede subscription by the witnesses, he justifies that interpretation of the act, although he thinks it a strict one, on the ground that it is such *signature* that the witnesses are to attest. He says that the English act clearly places more stress than that of South Carolina on the mere manner of executing wills, and he concludes: "When the statute expressly or by necessary inference requires such formalities, then nothing is left but to enforce it; but the court will not stress formalities which the statute does not." In Maryland, also, the court, in an earlier decision, declaring that, in that state, testamentary witnesses need not subscribe the will in presence of each other,

had called attention to the fact of the essential differences between the statute of frauds (of which it was said the Maryland act was a copy) and the Victorian statute, as pointed out by Sir Herbert Jenner-Fust.

The Illinois statute is unique. It enacts that

"all wills, testaments and codicils * * * shall be reduced to writing and signed by the testator or testatrix or by some person in his or her presence, and by his or her direction and attested in the presence of the testator or testatrix, by two or more credible witnesses, two of whom declaring on oath or affirmation, before the county court of the proper county, that they were present and saw the testator or testatrix sign the said will, testament or codicil in their presence, or acknowledged the same to be his or her act and deed, and that they believed the testator or testatrix to be of sound mind and memory at the time of signing or acknowledging the same, shall be sufficient proof of the execution of such will, testament or codicil to admit the same to record ; provided, that no proof of fraud," &c.

Plainly it is the will, not the signature or its acknowledgment, that is to be attested, and the supreme court of the state, in *Hobart* v. *Hobart, 154 Ill. 610,* has held that where a testator does not sign in presence of the witnesses it is not necessary for him to acknowledge in their presence a signature previously made, the words "the same," twice occurring in the statute, in the opinion of the court, referring back to "said will;" and while, in *Gibson* v. *Nelson, ubi supra,* the same court, solely on the authority of *O'Brien* v. *Galagher, Rosser* v. *Franklin* and *Miller* v. *McNeil, ubi supra,* did hold the order of signing immaterial, it indulged in reasoning that destroyed the force of its decision—if the statute requires attestation of signature—by declaring that "undoubtedly the proper order is for the testator to sign first, for after the witnesses had signed, he might never sign, or might sign on some other occasion, or out of their presence, which would not be a compliance with the statute."

I do not concede that the American cases were rightly decided. I very much doubt if the English courts would have so construed their basic legislation. In *Peate* v. *Ougly, ubi supra,* the verdict was justified only on the assumption that the jury found that there was execution before attestation. In *Windham* v. *Chetwynd, 1 Burr. 414, 421,* Lord Mansfield seems to imply such a

Lacey v. Dobbs.

necessity, while in *Roberts* v. *Phillips, 4 El. & B. 450, 459,*
Campbell (then lord chief-justice) assumes it in upholding as
valid a subscription by the witnesses at a place other than the
foot of a will made in 1828. He says: "The mere requisition
that the will shall be *subscribed* by the witnesses we think is
complied with by the witnesses who saw it executed by the tes-
tator immediately signing their names on any part of it, at his
request, with the intention of attesting it." In this country the
courts of five states have interpreted enactments copied from
the statute of frauds as requiring signature by or for the testator
before there can be subscription, in attestation, by the witnesses.
In North Carolina this occurred in 1841 (*Ragland* v. *Hunting-
don, 1 Ired. L. 561*); followed in 1854 (*In re Cox's Will, 1
Jones L. 321*); but the first adequate treatment of the subject
was in 1865, by Gray, J., in the Massachusetts supreme court,
in *Chase* v. *Kittredge, 11 Allen 49.* With a wealth of erudition
and argument he demonstrated, both on authority and principle,
that attestation cannot precede execution of a will. The Massa-
chusetts statute, enacted in 1836, as quoted in the report, was
as follows:

"No will (excepting nuncupative wills) shall be effectual to pass any
estate, whether real or personal nor to charge or in any way affect the
same, unless it be in writing, and signed by the testator, or by some person
in his presence and by his express direction, and attested and subscribed,
in the presence of the testator, by three or more competent witnesses."

On the point in question the learned judge saw no difference
between the statutes of Charles and Victoria, and he accepts
the English decision culminating in *Hindmarsh* v. *Charlton, ubi
supra,* as authoritative and coincident with the reason of the
case. He assumes indeed, as did the Kentucky court, that at-
testation and subscription are separate acts, but only to insist
the more strongly that subscription by the witnesses, which he
says is "in proof of" their attestation, must be the final act in
the series essential to a valid will. No judge differing in opinion
has attempted to answer the argument of Judge Gray, though
several have ignored the decision as authoritative except where,
as in the case decided, a necessary witness had subscribed the

will in the absence of the testator.  In a very recent decision
the supreme court of Massachusetts has adopted Judge Gray's
opinion in a case directly in point, and, as compactly stated
in the head-note, has held that "witnesses to a will must sign
after the testator has signed." *Marshall* v. *Mason, 176 Mass. 216
(1900).*  *Chase* v. *Kittredge* was approved and followed, in 1867,
in Indiana, where Chief-Justice Elliott says that the statute is
substantially the same as *29 Car. II. c. 3 § 5,* except that the
English act related only to devises and required three or four,
instead of two or more, subscribing witnesses.  *Reed* v. *Watson,
27 Ind. 443.*  In Georgia, in 1869, it was held that, under a like
statute, subscription of witnesses could not be vivified by ac-
knowledgment after a signing by the testator on the following
day (*Duffie* v. *Corridon, 40 Ga. 122*), and in 1891 it was directly
held, in an opinion by Chief-Justice Bleckly, that "the witnesses
to a will must subscribe their names as witnesses after the will
is signed by the testator—there being nothing to attest until his
signature has been annexed.  It makes no difference that the
signing and attestation are each a part of one and the same
transaction."  *Brooks* v. *Woodson, 87 Ga. 379.*  A concise, but
comprehensive, note by the reporter classifies the decisions on
the general subject, including some that are merely cognate to
the questions involved.  The annotation to this case, as reported
in *14 L. R. A. 160,* may also be consulted with profit.  The
fifth state is Texas, where the ruling, though postulated for a
decision of the tenor of *Roberts* v. *Phillips, ubi supra,* is positive
and unequivocal.  *Fowler* v. *Stagner, 55 Tex. 393.*

It appears, therefore, that even under statutes not, in terms,
requiring a testator's *signature,* but only his declared written
will, to be attested, very weighty judicial opinion repudiates the
idea that there can be attestation before signature.  In no case
has it been held that, where there is that requirement, subscrip-
tion of witness can precede such signature.  The only state
having that statutory requirement, the courts of which have had
occasion directly to deal with it, is the State of New York.
There the statute, since January 1st, 1830, has read as follows:

Lacey *v.* Dobbs.

"Every last will and testament of real or personal property, or both, shall be executed and attested in the following manner: (1) It shall be subscribed by the testator at the end of the will.   (2) Such subscription shall be made by the testator, in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses.   (3) The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament, and (4) there shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will, at the request of the testator." *2 Rev. Stat. p. 63 § 40.*

In construing this statute, in *Vaughan* v. *Burford, ubi supra,* and other decisions, Surrogate Bradford went astray.   The supreme court, following him, established a will signed by the witnesses before subscription by the testator, but on the same occasion.   The judgment was reversed in 1868 by the unanimous voice of the court of appeals, then exceptionally strong.   The reasoning of the opinion of Woodruff, J., is so cogent, yet simple, that I will quote it.   After showing the substantial identity of the New York statute with section 9 of *1 Vict. c. 26,* and citing many of the English decisions interpreting that act, he proceeds:

"Our statute on this precise point reads: 'There shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will at the request of the testator.' They are, in and by this act of signing their names, to attest, not only the signing, or acknowledgment of signing, of the testator, but his contemporaneous declaration that it is his will. Their signatures do not attest the signing by the testator if they are placed there before the will is signed by him.   For some period, longer or shorter, as the case may be, those signatures attest no execution—they certify what is not true—when and in what moment do they begin to operate as a compliance with the statute?   The only reply that can be given is, when the testator signs his name.   This is a dangerous construction of the statute.   May the testator keep these signatures in his possession one hour, one week or one year, and then add his signature? Certainly not, unless he summon the same persons to see him sign or hear his acknowledgment thereof.   But suppose he adds his signature and dies, what then becomes of the presumption

of due execution, arising from the apparent regularity and the due form of the attestation clause? Once let it be settled that witnesses may sign before the testator and all presumption of due execution, when witnesses are dead or beyond reach, ceases. If it be said that witnesses will not sign, and so leave their names in the possession of a testator; to suppose they would, is to impeach their honesty, and it is the presumption of men's truth and honesty which makes regularity and formal attestation *prima facie* evidence of due execution, I do not think this a sufficient answer. The statute contemplates acts, each of which is serious and important. Execution and the attestation thereof bear a plain relation to each other in point of time, in the good sense and common apprehension of everyone, and the statute prescribing the requisite formalities to a valid execution and authentication plainly contemplates that the acts of the witnesses shall attest the signing and declaration of the testator as a fact accomplished. I was at first inclined to think that if the whole was done at the same interview, the attestation by the signing of the witnesses might be done in any part of it, without regard to the order of events, as above suggested, the acts of the testator may be; but, upon further reflection, I am satisfied that the view taken of the subject of the ecclesiastical court in England best conforms to the language and intent of the statute. The signing or acknowledgment by the testator and his declaration that the instrument is his last will and testament are, in the statute, made contemporaneous, and neither must necessarily precede the other, and yet, in practice, this must be construed to mean on the same occasion, each as part of the same transaction, and not requiring that the words of declaration should actually accompany the movement of the pen in signing, or be actually embraced in the terms of acknowledgment of such signing. Practically which utterance is first is of no possible importance. The attestation by witnesses is of a past transaction—it is so in its nature, and so in the ordering, and, I think, the meaning of the statute. This distinction, if it served no useful purpose, if the contrary was liable to no danger, nor led to any abuse, might be deemed a too strict adherence to the literal interpretation of the law. But reasons

Lacey v. Dobbs.

I have suggested already, I think, show that a strict adherence to the statute is demanded. Upon the ground that, according to the testimony as it appears in the case before us, the witnesses signed before the testator, the judgment of the supreme court should be reversed."

The doctrine of this case was reaffirmed in 1876, in the case of *Sisters of Charity* v. *Kelly, 67 N. Y. 409,* Folger, J., saying: "It is clearly proven that the witnesses to the instrument saw no act of signing it by the deceased until after they had signed their own names to it. It is the law of this state that a subscription of a will by the testator after the witnesses have signed their names to it is not a due execution of it by him."

It is quite plain that if the true interpretation of our statute is that the witnesses are to attest, by their subscription, the testator's signature, or acknowledgment of signature, an instant of precedence on their part will render that impossible. There is no force in the argument that, in case of an uninterrupted transaction, the orderly course of procedure is not material. The case is not one of a rule that may be relaxed, but one of interpretation of language which, in the nature of things, must be rigid. Once it is determined what the words of a statute mean, they must, under all circumstances, have that meaning. It is not permissible to hold that "follow" can ever mean "precede." Besides, such a judicial modification of the statute—for that it must be—would be unsafe. Witnesses subscribing a will, on the faith that the testator will immediately sign it, can retain no dominion over the paper, and can in no way recall their act or advertise its abortion if the testator fails on his part. Protection, as well of the witnesses as of the testator, demands that there shall be a signature before attestation. Argument based on a loose practice with other than testamentary writings is valueless, for their *validity* does not depend on due attestation.

I conclude that, under our statute, it is essential to validity that everything required to be done by the testator shall precede, in point of time, the subscription of testamentary witnesses.

I shall therefore in this case vote for reversal and for the direction of decree denying probate to the paper-writing propounded as the will of Mary Ann Caldwell.

Davenport's Case.

*For reversal*—Van Syckel, Dixon, Garrison, Gummere, Collins, Garretson, Hendrickson, Vredenburgh, Voorhees, Vroom—10.

*For affirmance*—Bogert, Krueger, Adams—3.