In the matter of the appeal from the decree of the Burlington county orphans court denying probate of a certain paper-writing purporting to be the last will and testament of Hannah S. Cook, deceased.

JOSEPH P. TAYLOR et al., appellants,

*v.*

RECTOR, WARDENS and VESTRYMEN OF CHRIST CHURCH, BORDENTOWN, NEW JERSEY, et al., respondents.

[Argued February 14th, 1935. Decided May 17th, 1935.]

*Mr. Joseph C. Haines* and *Messrs. Powell & Parker,* for the appellants.

*Mr. John H. Hutchinson* and *Mr. Jay B. Tomlinson* (*Mr. Arthur T. Vanderbilt,* of counsel), for the respondents.

The opinion of the court was delivered by

LLOYD, J.

The question for solution in this case is whether the will of the testatrix, Hannah S. Cook, was executed in accordance with the requirements of section 24 of the statute of wills which provides that:

"All wills and testaments  *  *  *  shall be in writing, and shall be signed by the testator, which signature shall be made by the testator, or the making thereof acknowledged by him, and such writing declared to be his last will, in the presence of two witnesses present at the same time, who shall subscribe their names thereto as witnesses, in the presence of the testator."

The factual phases of the case have been considered with great care by the learned vice-ordinary in the prerogative court. From his narrative it is quite clear that the section was fully complied with in all respects unless by the statute it is required that the witnesses shall sign in the presence of each other as well as in the presence of the testator. Pointing out that the statute does not so require, he nevertheless concludes that they did sign in the presence of each other.

In the conclusion to which we have arrived we find it unnecessary to consider the sufficiency of the proofs to sustain the finding below on this point. Our conclusion will rest

on the proper construction of this part of the section which has not heretofore been presented for determination in this court.

It is first to be noted that while the statute requires that the signatures of the witnesses be made in the presence of the testator, it significantly fails to require that they shall be made in the presence of each other.

The Wills act of 1850, page 280 (amended in phraseology though not in substance as bearing hereon, in 1851, page 218), of which the above citation is a part in section 24, was drafted from the English Wills act of 1837, which was identical in form except that the word "attest" was used in addition to the word "subscribe," which difference for present purposes is immaterial. At the time of passage of our own act the English statute had been definitely construed as not requiring that the witnesses should attest in the presence of each other. *Cooper* v. *Bockett (1843), 3 Curt. 648; 1 Jarm. Wills 255.*

Similar legislation in the states has likewise been interpreted as it reads. Notable cases are *Barker* v. *Hinton, 62 W. Va. 639; Parramore* v. *Taylor, 52 Va. 220; Dow's Estate, 181 Cal. 106.*

In *68 C. J. 706,* the general subject is treated with the conclusion of the editor that "it is not necessary that the attesting witnesses should subscribe their names in the presence of each other where the statute does not require it." The footnote to this editorial comment cites the cases uniformly so holding, many of the statutes passed upon being in language substantially identical with our own.

Construing another phase of our wills statute, Mr. Justice Collins, speaking for this court, in *Lacey* v. *Dobbs, 63 N. J. Eq. 325,* in respect to the origin of our own act and the effect of the English construction, says: "The substantial identity of much of the language used with that of the English statute of 1837 makes it indisputable that the one was the model for the other. Ours is the more stringent, if there be any difference in the forms of expression. I will not say that the interpretation of the English courts of several years'

standing at the time of New Jersey's adoption of the English act should be read into our statute; it is enough to say that such interpretation is highly persuasive."

Since the foregoing was written our courts have spoken more definitely to the effect that when it is clear, as it so appears in this case, that the legislation is but the enactment in this state of the law of another state or country, the interpretation as given in the place from which it is taken will be presumed to be that intended by the legislature of our own state in so adopting it. *Neilson* v. *Russell, 76 N. J. Law 655; Hopper* v. *Edwards, 88 N. J. Law 471; Scalise* v. *Uvalde Asphalt Paving Co., 98 N. J. Law 696; Valents* v. *Boggiano, 107 N. J. Law 456.*

The statute came before the prerogative court in the case of *In re Clark's Will, 52 Atl. Rep. 222*. The will was declared invalid on other grounds, but Vice-Ordinary Reed (a jurist of great learning and sound judgment, formerly and thereafter a member of this court) made this comment respecting the signing by the witnesses: "In respect to the point that the witnesses did not subscribe in the presence of each other, there is this to be said: The statute does not require it in express words. The English statute of 1837 requires that the witnesses shall attest and subscribe the will in the presence of the testator, and it has been held that they need not so subscribe in the presence of each other. *1 Jarm. Wills (Rand. & T. Ed.) 255*. The English statute differs from ours only in the use of the word 'attest' in addition to the word 'subscribe,' which difference is unimportant on the point in question. So the fact that Mr. Zerbe signed in the absence of Mr. Smith would not, following the English rule, invalidate the will."

When that case came into this court the decree was affirmed, likewise on other grounds. Respecting the question now presented, after commenting that the witnesses were not shown to have subscribed their names in the presence of each other, it was said: "Whether such a requirement, although not distinctly expressed in the act, results by natural and necessary implication, from the statutory language, is a question

that need not now be decided, and as to which we express no opinion." *Clark* v. *Clark, 64 N. J. Eq. 361.*

The question is now before us. As already noted the statute does not by its terms require that the witnesses shall subscribe their names in the presence of each other, and the courts will never lightly incorporate in legislative enactment a meaning not expressed therein; it would only be justified in so doing by the compulsion of a necessary implication. Such implication we do not find. Were we to conclude otherwise we must not only so decide in the face of the construction adopted in the country of origin at the time the statute was enacted here, but in the face of like rulings in our sister states.

It is urged that it is the usual practice of careful practitioners to include in the attestation clause of wills recital that the witnesses signed in the presence of each other as well as in the presence of the testator; that this indicates a professional view out of harmony with the view now expressed, and that the act of 1906 (chapter 162, page 305) evinces a legislative construction of the earlier statute.

We do not regard these contentions well founded. The practice of the profession has not been uniform, as the many cases before the courts in the last eighty-five years will attest, and if it were otherwise it would be but the prudent conduct of wise counsel in dealing with a matter of so great moment as the execution of one's last will to guard himself against any possible interpretation, be it never so remote.

As to the statute of 1906, it is to be noted that it was giving drastic and final effect to the probate of a will under certain circumstances and in so doing added the requirement that the will must have an attestation clause, and that such clause state additionally that the witnesses sign in the presence of each other. If it had been intended to enlarge the requirements concerning the execution of wills generally why was it not required that an attestation clause be uniformly attached, and why, knowing as the legislature must have known, of the construction placed on the original statute in the courts of England, in our sister states on similar acts, and the view

expressed in *Clark* v. *Clark, supra,* did it not, if it were intended so to do, either construe what its predecessor had done or specifically apply the added requirement to all wills?

The answer, we think, is obvious. The great object sought to be accomplished in the Wills act is to secure, on the one hand, the integrity of the document itself, and on the other, to avoid provisions in the execution which, without adding to such integrity, might well defeat testamentary acts by an unnecessary multiplication of non-essential details.

It is a matter of common observation (indeed the present is an apt illustration) that wills are not infrequently executed *in extremis* and under circumstances which preclude the assistance of professional guidance, and hence that only those safeguards were incorporated which were deemed essential to the attainment of the object first above set forth. The books are replete with frustrated efforts to dispose of property by will because of failure to comply with the already stringent provisions surrounding the execution of one's last testament. We are not at liberty, and have no disposition, to add by unwarranted implication others which the legislature has not itself enacted.

The decree is affirmed.

*For affirmance*—The Chief-Justice, Lloyd, Bodine, Donges, Perskie, Van Buskirk, Hetfield, Dear, Wells, JJ. 9.

*For reversal*—Parker, Case, Heher, Kays, JJ. 4.