This matter was originally referred to Vice-Chancellor Lewis, and, upon his retirement, was re-referred to me. It involves an appeal from an order of the Surrogate of Bergen County, denying probate to a document alleged to be the will of a soldier.
The facts are not in dispute. The decedent, Edward A. Beck, a resident of Wood-Ridge, in Bergen County, enlisted in the United States Marine Corps on July 10th, 1939. He was discharged May 3d 1946. On May 20th, 1946, while in the State of Nevada, Beck was killed. He had married on August 6th, 1942.
On January 30th, 1946, Edward A. Beck, while in the military service, wrote the instrument which was offered for probate as his will. The paper which was signed by Beck was enclosed in a sealed envelope bearing the following statement: *Page 16 
"NAVY DEPARTMENT Headquarters Squadron Marine Aircraft Group 22 c/o Fleet Post Office, San Francisco, Calif. OFFICIAL BUSINESS
 DO NOT OPEN THIS EXCEPT IN THE CASE OF MY DEATH. Ed."
This envelope was accompanied by a note reading as follows:
"Sya Lyd —
You don't have to show this to the folks, but its something I should have done, a long time ago. Not Now don't get excited, it's just a Will. It should be legal, I guess. It may save some argument.
 See ya' Ed.
Oh Incidently — If Eddy wants any or all of my technical books, why he can have 'em."
Both documents were sent by mail to his sister and brother-in-law in an envelope addressed as follows:
"W.O. Edw. A. Beck, USMC U.S. Hq. Sq. M.A.G. 22, 4th M.A.W. Jan. c/o F.P.O., San Francisco, Calif. 31 PM 1945 NAVY
 Passed by Naval Censor Mr. and Mrs. Edw. Schwerdtfeger 161 Jefferson Street Wood-Ridge, New Jersey"
The instrument offered for probate is in the following language:
"30 January 1945
First off — My tools — I want Ted to get 'em all, except if Pop or Ed S. wants or needs any of 'em and its O.K. with Ted, why it suits me. But, I want some one who can appreciate 'em and will take care of 'em.
 ----
My clothes —
All of 'em to Ted, 'cause he's the only one they will fit. *Page 17 
My Green officer uniforms —
Send 'em collect to the Post Quater Quarter Master, Marine Barracks, Quantico, Va. for resale, and the proceeds to go to the Navy Releif Socity.
 ---- 2
30 January 1945
War Bonds —
Even tho Mom Pop are carried as Beneficiary on these, If possible, let them mature, and then (if the folks don't need the money) split 'em up like so — .2 to Magda, .3 to Anna, .3 to Lydia, and .2 to Ted. (thats 2 tenths, 3 tenths etc)
 ----
Cash American —
All of it to Mom Pop
 ----
Trunk — Let Teddy have it.
 ----
INSURANCE and this is a headache.
The policy I have with Metropolitian, (I think its about 3 or 4 hundred) to Lydia Ed, for all the favors, and work they've done for me.
 3
30 January 1945
The Thousand dollar policy to be split 4 (four) ways, one equal part to Magda, Anna, Lydia Ted.
My ten thousand Policy all to the folks, with the proviso (where did I pick that word up) that when if something happens to them, that the proceeds go to Teddy.
Oh yeah — Ted can also have my watch and anything else I forget.
AND NOT A BLOODY CENT TO MAGGIE.
Have a good time with this stuff, folks, and don't feel too unhappy. I aint.
 EDWARD A BECK W.O., USMC"
It is undisputed that the alleged will and the memorandum accompanying it were signed by the said Edward A. Beck. At the time the documents were written, Beck, to quote the official record of the Marine Corps, was serving "as a Warrant Officer with Headquarters Squadron 22, Marine Aircraft Group 22, Fourth Marine Aircraft Wing, in the combat zone of Marshalls Islands, Gilbert Area."
The statute, R.S. 3:2-7, excepting wills of soldiers and sailors from the provisions of the Wills Act is as follows: *Page 18 
"Disposition of personalty by soldiers and sailors.
"Disposition of movables, wages and personal estate may be made as heretofore by a soldier while in actual military service or by a mariner or seaman while at sea and nothing contained in this chapter shall affect such dispositions."
The language just quoted is changed but slightly from that found in Comp. Stat. p. 5865 ¶ 18, which reads as follows:
"That notwithstanding this Act any soldier being in actual military service or any mariner or seaman being at sea may dispose of his movables, wages and personal estate as he might have done before the making of this Act."
That same phraseology is to be found in all of the earlier statutes of this state bearing upon the execution of wills. It is identical with that used in the English statute, 29 Car. IIch. 3 ¶ 23, which terminated the informality in the making of testaments theretofore existing.
The courts of England and this country in considering the section exempting the wills of soldiers and sailors from the provisions of the Wills Act, have construed it liberally in favor of the power of the testator to make a will. There are, however, certain criteria which the instrument must meet if its validity is to be established.
In the case of a soldier's will, which is our problem, the testator must be in actual military service at the time the will is made. There must be a war, and the soldier in question must, in fact, be engaged in carrying it on. Van Deuzer v. Estate ofGordon, 39 Vt. 111; Estate of Gray (1922) Probate 140.
The language used must show an intention to make a testamentary disposition of property. The soldier is not required to be familiar with legal technicalities. It is sufficient if the words which he uses show that he intended to dispose of his property, the disposition to take effect at his death.
And the will must deal only with personalty. It has been held that if a soldier's informal will disposes of both personalty and realty, it is invalid unless it can be shown that *Page 19 
the gifts of personalty were independent of the gifts of realty.Godman v. Godman (1920), Probate 261.
Measured by the above standards, the paper offered for probate as the will of Edward A. Beck, deceased, is a valid testament. At the time he wrote it, Beck was in the military service, engaged in the prosecution of the war in a combat zone. The instrument is clearly testamentary in character and deals only with personal property.
The will, being valid when made, remained valid until revoked by the testator. The termination of hostilities did not affect its validity. Some act of the testator indicating a desire to revoke the will was required. There is no evidence here of any intention of the testator to revoke the will.
I shall advise a decree admitting to probate the instrument in question as the last will and testament of Edward A. Beck, deceased. *Page 20