19 N.J. Super. 47 (1952)
87 A.2d 778
IN THE MATTER OF THE ESTATE OF RICHARD JAMES KNIGHT, DECEASED.
Superior Court of New Jersey, Hudson County Court Probate Division.
Decided March 21, 1952.
*48 Mr. John G. Flanigan, attorney for William Knight, plaintiff.
Messrs. Burke, Sheridan & Hourigan, attorneys for Mary Meixner Knight, defendant (Mr. Edmund B. Hourigan, of counsel).
DREWEN, J.C.C.
Complaint is made for the probate, as the last will and testament of Richard James Knight, deceased, of a letter bearing date August 30, 1950, written by *49 decedent to his uncle, William Knight, and claimed to be lawful and sufficient to the purpose, according to the statute respecting the making of wills by soldiers in actual military service (R.S. 3:2-7). The letter's contents have reference to personal property only.
Decedent was a private in the United States Marine Corps and met his death on May 20, 1951, while engaged in combat service in the Korean theatre of hostilities. He was born on January 24, 1931, so that at his death he had not attained his majority.
The primary question is whether decedent's non-age, in and of itself, disqualifies the paper as a testamentary disposition. It centers in two brief sections of Revised Statutes (3:2-2 and 3:2-7), and in whether these sections are inter-related. R.S. 3:2-2 provides: "Wills made by a person within the age of twenty-one years, or by an idiot, lunatic or person of non-sane mind and memory, shall not be valid." R.S. 3:2-7 provides: "Disposition of movables, wages and personal estate may be made as heretofore by a soldier while in actual military service or by a mariner or seaman while at sea and nothing contained in this chapter shall affect such dispositions." Does the scope of reference carried by the words "made as heretofore" in the latter section include release from the age requirement in the former? The answer lies in the history of the soldiers' and mariners' proviso in the law of wills, a subject to which legal scholarship has given some attention. (31 Harv. L. Rev. 1024, 1917-18; 27 Yale L.J. 806, 1917-18; 33 Iowa L.R. 48, 1947). The two sections come to their respective places in our current revision by way of a long line of antecedent enactments, English and American, a careful review of which leaves no doubt, in my opinion, that R.S. 3:2-7 is not a modification of and bears no reference to the provisions of R.S. 3:2-2, and that the present qualifying age for testamentary capacity stands unaffected by it.
It will be seen, for one thing, that throughout the phases of the law that witnessed first the absence of a full age requirement *50 for disposition of personalty, and later the establishment of that requirement, the special enabling provision for soldiers and mariners has remained unchanged. I take this to be one reason for concluding that these enablements concern requisites of valid will-making other than those respecting testamentary age. For cases indicating the proper application of R.S. 3:2-7 see In re Sheridan, 21 N.J. Misc. 473; In re Straulina, 4 N.J. Misc. 599 (Orph. Ct. 1926); In re Beck, 142 N.J. Eq. 15 (Prerog. 1948).
Moreover, having in mind how provocative of contest probate issues are so commonly found to be, the well nigh complete lack of decisions on the particular point in issue I believe to show the non-existence of the statutory meaning that plaintiff urges. There is nothing to indicate that the question has ever come up for decision in this State. And curiously enough but three cases have been found throughout the country (Goodell v. Pike, 40 Vt. 319 (1867); In re Evans' Will, 188 N.W. 774 (Iowa, 1922); Henninger's Est., 30 Pa. Dist. 413 (Pa. 1921). The Vermont case (supra) held the infant soldier's will invalid. The provision of our statute that a soldier's will "may be made as heretofore" was parallelled in the Vermont statute by the provision that "nothing in this chapter" shall be taken "to prevent" the making of a will by a soldier under the conditions indicated, "as he might otherwise have done." The court held the latter reference to be "merely to the mode of execution." In the Iowa case also the will was declared invalid, but the decision does not present the reasoning that in my judgment is applicable to the case before us. In the Pennsylvania case the will apparently was nuncupative. The court sustained it but the decision has no feature that is helpful here.
In the English aspect of the matter there will appear what I judge to be positive and peculiar emphasis of the non-relation of testamentary age to the historic proviso in question. To begin with, in the English law, where the statutory provisions that concern us have their origin, there was sharp *51 difference between the testamentary age requirement in relation to dispositions of lands and those in relation to dispositions of personalty. After a period in England immediately following the Norman Conquest and during which wills of realty were not permitted at all (except by the resort to uses), there came the enabling acts of the reign of Henry VIII. By these we find it provided, among other things, "That wills or testaments made of any manor, lands, tenements or other hereditaments, by any woman covert or person within the age of twenty-one years, idiot, or by any person of non-sane memory, shall not be taken to be good or effectual in the law."
There is, however, eminent authority for the view that with respect to uses the disabilities thus set forth were recognized at common law, 1 Jarman on Wills (5th Amer. ed. 1880), p. 59. And the same author declares, "that the disqualifications in question were not the creation of the statute is evident from the fact that they all extended equally to the bequeathing of personal estate, except that infants of a certain age, namely males of fourteen and females of twelve, were at the period now under consideration competent to dispose by will of personalty." (Cases cited.) The early age of testamentary competence at common law for wills of personalty is otherwise amply authenticated. See 1 Williams, Executors (6th Amer. ed.), 19 et seq.; 2 Blackstone's Commentaries 497; Comyn's Digest, Devise H.2. And it is of fundamental import in the decision that this liberal sanction of the common law obtained throughout the period during which the soldiers' and mariners' proviso came into the statutes.
Apprehensions said to have arisen from the lack of effective safeguards in the execution and revocation of wills brought about the inclusion in the Statute of Frauds of 1676 (29 Car. 11.3) of the wills provisions found therein. It need not be remarked that with various changes of form and some of substance this enactment of the British Parliament found its way into the statute books of our own states. The Statute *52 of Frauds imposed no age requirement upon testamentary capacity, neither respecting dispositions of realty nor personalty; that is, it made no change in the existing law on the subject. Section 23 of the statute reads as follows: "Provided always: That notwithstanding this Act, any soldier being in actual military service, or any mariner or seaman being at sea, may dispose of his movables, wages and personal estate as he or they might have done before the making of this Act." For every present purpose, at least, the text just quoted may be regarded as the first appearance of the soldiers' proviso in the statutes of England. Quite obviously its exemption alludes to one already recognized at common law for persons of the class and condition described. Or, stated another way, the design was to save from statutory interference common law practices or prerogatives then existing. In line with this and considering those provisions of the statute that make new exactions for the validity of nuncupative wills, there may be seen in the soldiers' proviso the granting of a release from those exactions to the persons referred to. But whatever the exemption may have been in precise terms, any relation between it and an age limitation for the making of wills of personalty must be judged in the light of the common law already cited.
The next outstanding phase in the English development is reached after the long interval between the reigns of Charles II and Victoria. In 1837 the Wills Act was passed (I Vict., c. 26). It strengthened the testamentary requirements of the Statute of Frauds and it put to rest some of the questions that had arisen under the former law. Section 7 of the act is important in that it originates the testamentary requirement of full age without regard to the kind of property disposed of. The unqualified provision is that no will made by any person under 21 years of age shall be valid. And section 11 reads: "Provided always and be it further enacted that any soldier, being in actual military service, or any mariner or seaman being at sea, may dispose of his personal estate as he might have done before the making of this Act."
*53 The provisions of sections 7 and 11 of the English Wills Act of 1837 present a strict parallel to the juxtaposition of the two corresponding sections (supra) in our own Revision of 1937. And thus the basis, such as it is, for proponent's contention here that the two sections are interrelated, is seen to have been completely developed in the statute law of England over a century ago. Now, the only possible contention for the validity of the proffered paper is that the intended effect of the proviso in R.S. 3:2-7 is to relieve soldiers and mariners, in the condition prescribed, from the full age requirement imposed by R.S. 3:2-2. But the weakness of the contention is manifest. If in the present state of the law the intent of the soldiers' section is to be taken as indicated, we are left only to conclude that its intent in the earlier state of the law must have been to release the age limitation for soldiers in actual service and mariners at sea in the persons of male children under 14, those of 14 and over not requiring the release. The hypothesis is too unreasonable to stand. The enabling scope of the soldiers' proviso must, on this ground alone, it seems to me, be judged not to include the matter of testamentary age.
The English act of 1837 was based upon the report of a board of commissioners, and it is of interest to note in passing that from this report it may be taken, by fair inference at least, that the soldiers' proviso was in no way designed to alter or affect the age limitation of section 7, but only the formality requirements of sections 9 and 10. (4th Report of Real Property Commissioners, 22, 23 (1833)).
All of this notwithstanding, the truth is that the English practice, some time after the passage of the Wills Act of 1837, so developed that it did come to admit to probate the wills of infant soldiers. In re McMurdo, L.R., 1 P. & D., 540 (1867); In re Hiscock (1901), pp. 78, 80. Apparently the sole authority for this was a decision rendered upon an ex parte motion in the case of In re Farquhar, 4 Notes of Cases 651 (1846). At any rate, the question was not finally settled in England until the close of the first World War and *54 then by another statute, the Soldiers' and Sailors' Wills Act of 1918. The new statute declared, in so many words, that in order to remove all doubt as to the construction of the Wills Act of 1837, it was thereby enacted that section 11 of the earlier act authorized, and always had authorized, any soldier being in actual military service, or any mariner or seaman being at sea, to dispose of his personal estate as he might have done before the passing of the act, though he be at the time under the age of 21 years. It is probable that the seemingly exigent interest of Parliament in the subject is to be accounted for by a contemporaneous litigation that had engaged public interest. In re Wernher, 1 Ch. 339 (1918). In that case an infant officer of the British Army had made a will, properly executed, by which he had attempted to dispose of one million pounds over which he had testamentary power of appointment. While still an infant he was killed in action, and his will had been admitted to probate as a soldier's will under the 1837 act. The case came before the Chancery Division, questions having arisen as to the validity of the attempted exercise of the power of appointment, but more particularly as to whether the will was sufficient to execute a general power over personalty. It was held that so long as the probate stood unrevoked, the power was validly exercised. But the thing of moment to the instant decision is the view expressed in the court's opinion. Younger, L.J., reviewed the origin and history of the special favor accorded by the law to soldiers and sailors in the making of wills and concluded that the practice of admitting to probate wills of infant soldiers had no justification in the 1837 statute, declaring further that if the question were to come before the Court of Appeals it would be necessary to declare such wills invalid. This holding was appealed, but when it came to decision the upper court was confronted by the statute of 1918.
The fact that nothing less than the enactment of a new law was availed of, in the English statute of 1918, I deem to be significant and revealing. We may well suppose that without *55 it, and without other like measure at a later time, the contrary judicial view expressed in the Wernher case, supra, which was in no way mitigated by the reviewing court (2 Ch. 82-C.A., 1918), would have prevailed and endured. The certainty is that no equivalent of the English act of 1918 has ever appeared in New Jersey.
Coming now to the history of the subject in our own State, we can begin by a reference to the concise review of the early New Jersey law of wills in Girard Trust Co. v. Schmitz, 129 N.J. Eq. 444 (Ch. 1941), at p. 453. The earliest relevant legislation is the Colonial Assembly Act of March 17, 1714. Its prototype quite apparently was section 5 of the Statute of Frauds. See Lacey v. Dobbs, 63 N.J. Eq. 325, 329 (E. & A. 1901). It places no age limit upon testamentary capacity, it makes no exception as to the wills of soldiers or others, and it had no application to wills of personalty. Girard Trust Co. v. Schmitz, supra, at p. 453. It was expressly repealed by the law of 1898, p. 711, although it had already been impliedly repealed by the statute of 1850, infra.
The first comprehensive legislation is a statute of 1795, an act concerning wills. Many of its provisions follow rather closely the English Statute of Frauds. The provisions for nuncupative wills are almost verbatim those of section 19, et seq. of the English act; and immediately following the nuncupative will provisions there is this: "Provided always * * * notwithstanding this act, any soldier, being in actual military service, or any mariner or seaman, being at sea, may dispose of his moveables, wages and personal estate, as he might have done before the making of this act." Needless to say, as in England before 1918, so here until and including the present time, the New Jersey proviso of 1795 must be read against the common law background already reviewed. As to the other provisions of the 1795 act, it needs only to be said that they are all within the subject's English statutory tradition.
In substance the statute of 1795 was reenacted in the New Jersey revisions of 1821 and 1846. Such innovations as *56 these revisions do carry are not material to the question. But in 1850 an important change was made (L. 1850, p. 280). The 1850 act was drafted from the English Wills Act of 1837, Taylor v. Rector, etc., Christ Church, 118 N.J. Eq. 288 (E. & A. 1935). As the English act had done in 1837, so the New Jersey act did in 1850, it initiated for valid testamentary dispositions of personalty the requirement that the testator be of full age. Section I reads: "* * * and no will or testament of personal estate, made after this act shall take effect, by a person within the age of twenty-one years, shall be good or effectual in law." It imposed new requirements for the making and execution of wills, these also having been taken from the English act of 1837.
In the following year there was enacted a further supplement to the 1846 Wills Act (L. 1851, p. 218), section 7 whereof repeals the act of 1850. The 1851 act repeats the above-quoted age limitation of the act of 1850. Both statutes expressly preserved unchanged the law of nuncupative wills.
The question now arises, upon the taking effect of the law of 1850 and its reaffirmance in the law of 1851, was a minor, engaged in active military service, legally competent in this State to make a will? It is my opinion that he was not. As we have seen, this legislation imposed in New Jersey for the first time the stated limitation as to age; and although nuncupative wills as such were expressly exempted from the operation of these statutes, soldiers' wills as such were not. Whatever argument can be devised for the identification of soldiers' wills with nuncupative wills, the fact remains that (a) notwithstanding the sameness that can readily be envisioned for the emergencies in which wills in the two categories might be made, they are nevertheless essentially different things; and (b) that in both England and New Jersey the two forms of disposition have had separate and distinctive statutory treatment.
Now, the extent to which the New Jersey enactments have been borrowed from English sources is obvious and the *57 applicable doctrine is "That when it is clear * * * that the legislation is but the enactment in this state of the law of another state or country, the interpretation as given in the place from which it is taken will be presumed to be that intended by the Legislature of our own state in so adopting it." Taylor v. Rector, etc., Christ Church, supra, at p. 291. In 1846, as mentioned, probate of an infant soldiers' will was allowed in England. In re Farquhar, supra. But it will be recalled that this stemmed from nothing more than the outcome of an ex parte motion; and while the practice was not judicially reproved until the decision of the Wernher case, supra, it is of moment to note that though New Jersey was taking so much for its acts of 1850 and 1851 from the English act of 1837, it conspicuously omitted to take from it the proviso for soldiers' wills. The omission could well have been an effective means of avoiding the English practice in effect at just about that time, under the copied statute. As already stated, the statutory fiat of 1918, supra, which was apparently intended to resolve the conflict between the English Parliament and courts, has never had its counterpart in New Jersey.
This brings us to our Revision of 1877, which embodies that of 1846, including the soldiers' proviso, followed separately by the act of 1851. Does this evince any change in legislative intent? I think not. "Statutes are not to be construed with our eyes closed to the history that lies back of them. * * * the intent to change the law in a revision must be clear." Leonard v. Leonia Heights Land Co., 81 N.J. Eq. 489, 492 (E. & A. 1913). "There is a presumption against a legislative intention, by a revision of general laws, to effect a change of substance. * * * the intention to alter the essence must be expressed in language admitting of no reasonable doubt of the purpose." Crater v. County of Somerset, 123 N.J.L. 407, 414 (E. & A. 1939). "Even where two irreconcilable statutory provisions, separated in point of time of enactment so that the earlier was by implication repealed by the later, are incorporated into a revision *58 of general laws, the reenactment of the former is deemed an oversight and without effect." Edelstein v. Hub Loan Co., 129 N.J.L. 497 (Sup. Ct. 1943) at pp. 500-501. I do not mean to indicate the view that the age limitation of 1851 is irreconcilable with the earlier soldiers' exception. The contrary is too obvious, and the very point here made is that they are not irreconcilable. That the respective subjects of the two provisions are separate and distinct one from the other is, I am convinced, incontrovertably shown in their history. The existence of one has never depended on the existence of the other, which appears from the fact that the soldiers' proviso had its place in the statutory laws of wills during the existence of the full age limitation for dispositions of personalty, and also when, to every practical purpose that concerns our problem, there was no age limitation at all.
We come to the final phase, R.S. 3:2-2 and 3:2-7 in the current Revision of 1937. Did the present revision change the law? The pronouncements by the learned jurists above-quoted concerning the more precise effects of a revision are here equally apropos. I do not overlook "* * * the established rule that if a proviso in a statute be directly contrary to the purview, the proviso is good, and not the purview, since the former gives expression to the later intention of the legislature." Rutgers Chapter, etc., v. New Brunswick, 129 N.J.L. 238, 243 (Sup. Ct. 1942), affirmed 130 N.J.L. 216 (E. & A. 1943). But the proviso of R.S. 3:2-7 is not contrary to the purview, R.S. 3:2-2. R.S. 3:2-7 says that soldiers' dispositions of personalty "may be made as heretofore," and the situation "heretofore" has, in my opinion, been amply shown. While there is a change in the wording of R.S. 3:2-2, it is clear that the intent of the change is to consolidate in one section the two earlier sections, each respectively demanding full age as a prerequisite to valid testamentary dispositions of realty and personalty. The rule of statutory construction, above cited in the Rutgers Chapter case, would seem to be unnecessary where, as here, the former *59 and later intentions of the Legislature are beyond dispute.
Finally, I regard it as by no means unimportant that the soldiers' and mariners' proviso follows, not the age limitation, but the section dealing with nuncupative wills; and that this statutory order goes back to the English Statute of Frauds of 1676. The difference in origin too contributes its emphasis and explanation. The soldiers' proviso derives from the Statute of Frauds, and had been effective for more than a century and a half before the source of the full age requirement became known to the law, in the English Wills Act of 1837.
There is a late enactment bearing on the general subject (N.J.S. 3A:3-5), which did not become effective until some months after decedent's death and so does not concern us. However, the question of its meaning and its effect on the exemptions provided in the prior state of the common and statute law as well, and whether for expansion, restriction or repeal, evinces a problem happily no part of the present one.
For the reasons stated it is my opinion that the non-age of decedent, without more, requires that probate be denied. The paper was lodged for probate July 19, 1951. The surrogate rejected it and complaint was thereupon filed in this court. On July 18, 1951, letters of administration were issued to Mary Meixner Knight, decedent's mother. Complaint prays for probate of the writing and for the vacating of the letters. It is dismissed as to both.