See, also, 79 F.(2d) 828.

Mowitz & Kohlhas, of Philadelphia, Pa., Greer & Johnson, of Media, Pa., and Roper & Caldwell, Wesley H. Caldwell, and Arno P. Mowitz, all of Philadelphia, Pa., for appellants.

Fraley & Paul, of Philadelphia, Pa. (Henry N. Paul, of Philadelphia, Pa., of counsel), for appellees.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This case is here on appeal from orders of the District Court directing the appellants to appear, testify, and produce certain documents and exhibits before Everett G. Rodebaugh Esquire, appointed commissioner by the Exchequer Court of Canada in its commission obtained in a suit by appellees, Belding-Corticelli, Ltd., et al. v. Charles A. Kaufman, 10 F.Supp. 991, to annul or impeach a Canadian patent issued to Kaufman. The appellants are not parties to this suit and have no interest whatever in it.

The commission did not give Mr. Rodebaugh, as commissioner, authority to require the production of documents or physical exhibits, nor was the commission accompanied by any interrogatories, nor did it ask the aid of the United States courts.

The appellees filed a petition in the District Court for an order directing the issuance of subpœnas duces tecum against many witnesses, including the appellants, none of whom were named in the commission, commanding them to appear before the commissioner and be examined viva voce and bring with them certain file wrappers, drawings, etc., writings pertaining to United States and Canadian pat-

## JANSSEN v. BELDING-CORTICELLI, Limited, et al., and three other cases.

## Nos. 5842–5845.

Circuit Court of Appeals, Third Circuit.

June 9, 1936.

578

ent applications in which appellants were interested as applicants or otherwise. These papers were alleged to be material and tended to corroborate statements which appellants had made in their affidavits in certain interference proceedings in the United States Patent Office.

In their petition the appellees alleged that they filed specifications of objection in the Canadian proceedings to the effect that the invention, contained in the patent issued to Kaufman in Canada, had prior thereto been disclosed by the appellants, Krenkel, Meinig, and Janssen, and that the appellants were in possession of evidence which would establish these facts. Thereupon, the subpœnas were issued by the direction of the District Court in accordance with the prayer of the petition.

The appellants filed petitions to quash the subpœnas, but the court entered an order on May 10, 1935, denying the prayer of the petitions. It allowed exceptions and appeals, but refused a supersedeas which this court allowed, and the appeals are here on the merits.

The appellees contend that regardless of the merits of the case, the orders from which the appeals have been taken are interlocutory and not appealable.

If the orders are not appealable, that settles the case regardless of the merits. Section 128 of the Judicial Code, as amended (28 U.S.C.A. § 225) provides that the Circuit Court of Appeals shall have appellate jurisdiction to review by appeal or writ of error, final decisions of District Courts, except where a direct review may be had in the Supreme Court under other sections not pertinent here.

Were the orders appealed from final and appealable? The appellants here were strangers to the proceedings in the Canadian court. As above stated, they were not parties, were not mentioned in the complaint, nor in the commission issued by the Canadian court, and have no interest in the litigation. In order to protect their rights when the subpœnas were issued, they challenged the jurisdiction of the court and moved to quash the subpœnas. They appealed from both the order directing the issuance of the subpœnas and the order refusing to quash them. These orders directed the appellants to comply with the provisions of the subpœnas. A refusal without further proceedings would naturally have resulted in contempt and punishment therefor. These orders involving strangers to the litigation in Canada were independent in character, not interlocutory, but final and appealable. Savannah v. Jesup, 106 U.S. 563, 1 S.Ct. 512, 27 L. Ed. 276; Gumbel v. Pitkin, 113 U.S. 545, 5 S.Ct. 616, 28 L.Ed. 1128; Cogen v. United States, 278 U.S. 221, 225, 49 S.Ct. 118, 73 L.Ed. 275; Go-Bart Co. v. United States, 282 U.S. 344, 356, 51 S.Ct. 153, 75 L.Ed. 374.

Did the District Court have jurisdiction to issue or order the issue of the subpœnas? The only authority the court had for doing so arises under the Constitution of the United States and the acts of Congress. The only provision in the Constitution on the subject is contained in article 3, section 2, clause 1, which reads as follows: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a party;—to Controversies between two or more States;—between a State and Citizens of another State;—between citizens of different States,—between citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."

The Canadian patent suit and the ex parte proceedings in the District Court are not embraced within any of the classes enumerated in the above constitutional provisions. The conferring of judicial power, except in a few specified instances, belongs to Congress, but Congress has not given the power exercised by the District Court in this case to the courts. The thought has often been expressed that courts have inherent power to exercise such power as was done in this case, except as it had been curtailed and regulated by Congress, but this is not the case. Courts have only the power and jurisdiction which Congress within its constitutional limits has conferred upon them and any implied power necessary to exercise the power conferred. Nowhere has Congress given courts power to issue subpœnas under the facts existing in this case. In Revised Statutes, § 875, as amended (28 U.S.C.A. § 653), it is provided that letters rogatory or a com-

mission may be issued in any suit in which the United States is a party or has an interest. The last clause or paragraph of that statute provides that: "When letters rogatory are addressed from any court of a foreign country to any district court of the United States, a commissioner of such district court designated by said court to make the examination of the witnesses mentioned in said letters, shall have power to compel the witnesses to appear and depose in the same manner as witnesses may be compelled to appear and testify in courts."

▮ The statute is expressly restricted to letters rogatory which in turn must designate the commissioner. It is significant that the statute does not provide for the issuance of a subpœna duces tecum, and, in the absence of that power given by Congress, federal courts have decided that they have no power to issue such subpœna. In re Letters Rogatory (C.C.) 36 F. 306; Ex parte Moses (C.C.) 53 F. 346, 347; In re Outcault (C.C.) 149 F. 228.

▮ Under Revised Statutes, § 4071 (28 U. S.C.A. § 701), testimony of a witness residing in the United States to be used in any suit for the recovery of money or property pending in any court in any foreign country with which this country is at peace, and in which the governments of such foreign country shall be a party or shall have an interest, may be obtained to be used in such suit, if a commission or letters rogatory to take such testimony together with specific written interrogatories, accompanying the same, be issued from the foreign court and addressed to the witness upon producing the same to a District Judge where the witness resides or may be found. When it appears to the judge that such testimony is material to the party desiring it, he shall issue a summons to the witness requiring him to appear before the commissioner named in the commission or letters rogatory to testify in such suit. No witness shall be compelled under this section to appear and testify except for the purpose of answering such interrogatories so issued and accompanying such commission or letters. However, questions other than those accompanying the commission or letters rogatory may be put to the witness provided that all parties attend and consent thereto, but not otherwise.

It is clear that under neither of the above statutes can the court secure the testimony of the appellants. The commission was not addressed to the court. It did not contain the names of the witnesses, nor questions and interrogatories designed to secure the information desired.

The ability of District Courts to assist a court of a foreign country to secure the testimony of a witness residing, or found, in the district is circumscribed by constitutional and statutory authority. They are limited to the exact power conferred upon them. Neither the Constitution nor any statute operative in Pennsylvania, either state or federal, gives the court the right or authority to subject one of its citizens to a "roving oral examination," as was sought in this case. Neilson's Appeal, 230 Pa. 540, 79 A. 709; Force's Petition, 265 Pa. 228, 108 A. 622. We ought to do all within our power to help a foreign court obtain the testimony of any witness within the jurisdiction of the court, but we are confined to the power expressly or by reasonable implication conferred upon the court. This duty the court will gladly perform, and comity can ask no more.

The court did not have the power which it was asked to exercise, and the orders are reversed.