BENEFICIAL INDUSTRIAL LOAN CORPORATION (COHEN, et al., Interveners) v. SMITH, Judge.

COHEN (COHEN, Intervener) v. BENEFICIAL INDUSTRIAL LOAN CORPORATION et al.

Nos. 9558, 9567.

United States Court of Appeals
Third Circuit.

Argued March 15, 1948.

Decided Sept. 22, 1948.

John M. Harlan, of New York City (Emerson, Emery & Danzig and Charles Danzig, all of Newark, N. J., and Root, Ballantine, Harlan, Bushby & Palmer, and Wilkie Bushby, all of New York City, on the brief), for petitioner.

Edward J. O'Mara, of Jersey City, N. J. (O'Mara, Conway & Schumann [formerly Wall, Haight, Carey & Hartpence] of Jersey City, N. J., on the brief), for plaintiff-respondent.

Charles Hershenstein, of Jersey City, N. J., for intervener-respondent.

Before BIGGS, Chief Judge, and O'CONNELL and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

Hannah Cohen, Executrix of the Estate of Sol Cohen, deceased, is the plaintiff in a stockholders' derivative suit at our No. 9567 brought on August 9, 1943 on behalf of the corporate defendant, Beneficial Industrial Loan Corporation, a Delaware corporation, against the individual defendants, O. W. Casperson and the others named in the title of this appeal, officers and directors of the corporation. David Cohen intervened on the plaintiff's side. Jurisdiction is based on diversity of citizenship. The complaint is an exceedingly extensive one. It charges the individual defendants with corporate mismanagement and fraud. Article X of the By-Laws of the corporation provides that Beneficial will indemnify a director or officer of the corporation

against any claim or demand to which he shall have become subject by reason of his having been an officer or director of the corporation, including reasonable expenses and counsel fees.[1]

The plaintiff and intervener have never held more than 0.01¼% of Beneficial's stock. That corporation, pursuant to the provisions of R.S. 14:3–15, N.J.S.A. 14:-3–15, an Act passed by the New Jersey Legislature which took effect on April 10, 1945, see N.J.R.S.Cum.Supp. 14:3–17, N.J. S.A. 14:3–17, moved the court below for an order requiring the plaintiff and intervener to give security in the amount of $125,000. The statutes are set out in the footnote.[2] The court below denied the motion on the ground that R.S. 14:3–15 is remedial in intent and in effect and that therefore the statute's provisions are not binding on a district court of the United States in a suit based on diversity as they would be if the Act gave a substantive right. See 7 F.R.D. 352. Beneficial has appealed. As an alternative, in the event the order is found not to be appealable at this stage of the proceeding, it has also petitioned this court at No. 9558 for a writ of certiorari or for a writ of mandamus, to the end that an order be entered by this court directing the court below to give effect to the New Jersey statute and require the plaintiff and the intervener to give security.

---

[1] Article X in pertinent part is as follows: "The Corporation shall indemnify and hold harmless each person who shall serve at any time hereafter as a director or officer of the Corporation from and against any and all claims and liabilities to which such person shall have become subject by reason of his having heretofore or hereafter been a director or officer of the Corporation, or by reason of any action alleged to have been heretofore or hereafter taken or omitted by him as such director or officer, and shall reimburse each such person for all legal and other expenses reasonably incurred by him in connection with any such claim or liability; provided, however, that no such person shall be indemnified against, or be reimbursed for any expense incurred in connection with, any claim or liability arising out of his own negligence or wilful misconduct. The rights accruing to any person under the foregoing provisions of this Article shall not exclude any other right to which he may be lawfully entitled, nor shall anything herein contained restrict the right of the corporation to indemnify or reimburse such person in any proper case even though not specifically herein provided for. The Corporation, its directors, officers, employees and agents, shall be fully protected in taking any action or making any payment under this Article X, or in refusing so to do, in reliance upon the advice of counsel."

[2] N.J.R.S.Cum.Supp. 14:3–15, N.J.S.A. 14:3–15, provides: "In any action instituted or maintained in the right of any domestic or foreign corporation by the holder or holders of shares, or of voting trust certificates representing shares, of such corporation having a total par value or stated capital value of less than five per centum (5%) of the aggregate par value or stated capital value of all the outstanding shares of such corporation's stock of every class, exclusive of shares held in the corporation's treasury, unless the shares or voting trust certificates held by such holder or holders have a market value in excess of fifty thousand dollars ($50,000.00), *the corporation in whose right such action is brought shall be entitled, at any stage of the proceeding before final judgment, to require the complainant or complainants to give security for the reasonable expenses, including counsel fees, which may be incurred by it in connection with such action and by the other parties defendant in connection therewith for which it may become subject pursuant to law, its certificate of incorporation, its by-laws or under equitable principles, to which the corporation shall have recourse in such amount as the court having jurisdiction shall determine upon the termination of such action.* The amount of such security may thereafter, from time to time, be increased or decreased in the discretion of the court having jurisdiction of such action upon showing that the security provided has or may become inadequate or is excessive."

N.J.R.S.Cum.Supp. 14:3–17, N.J.S.A. 14:3–17, provides: "This act shall take effect immediately and shall apply to all such actions, suits or proceedings now pending in which no final judgment has been entered, and to all future actions, suits and proceedings."

For the sake of brevity throughout this text of the opinion in referring to these two statutes we shall omit the references "N. J." and "Cum. Supp."

Emphasis added in this note and throughout the opinion.

### As to the Appealability of the Order Complained of.

Preliminarily, we must determine whether the order of the court below is appealable. Our appellate jurisdiction of course is purely statutory. United States v. Horns, 3 Cir., 147 F.2d 57. 28 U.S.C.A. § 1291, provides for the appeal of final decisions. But, as was pointed out by Judge Magruder in Rubert Hermanos, Inc. v. People of Puerto Rico, 1 Cir., 118 F.2d 752, 757: "A 'final decision' is not necessarily the ultimate judgment or decree completely closing up a proceeding. In the course of a proceeding there may be one or more final decisions on particular phases of the litigation, reserving other matters for future determination. See Knox National Farm Loan Ass'n v. Phillips, 300 U.S. 194, 197, 198, 57 S.Ct. 418, 81 L.Ed. 599, 108 A.L.R. 738; Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157; Gay v. Hudson River Electric Power Co., 2 Cir., 184 F. 689; Dant & Russell v. J. D. Halstead Lumber Co., 9 Cir., 103 F.2d 306. The words 'final decisions,' like the equivalent 'final judgments and decrees' in former acts regulating appellate jurisdiction, have not been understood in a strict and technical sense, but have been given a liberal and reasonable construction. Forgay v. Conrad, 6 How. 201, 203, 12 L.Ed. 404; City of Eau Claire v. Payson, 7 Cir., 107 F. 552, 557."

In Cobbledick v. United States, 309 U.S. 323, 328, 60 S.Ct. 540, 84 L.Ed. 783, the opinion by Mr. Justice Frankfurter contains an illuminating discussion of the subject of finality and refers to the "mischief" which may come to pass when an erroneous order, though made early in a proceeding but of final effect in determining a party's right, is considered not appealable. While the Cobbledick opinion deals with a criminal appeal the principle set out therein is equally applicable to civil causes. In United States v. River Rouge Imp. Co., 269 U.S. 411, 414, 46 S.Ct. 144, 145, 70 L.Ed. 339, it was said, "While the general rule requires that a judgment of a federal court shall be final and complete before it may be reviewed on a writ of error or appeal, it is well settled that an adjudication final in its nature as to a matter distinct from the general subject of the litigation and affecting only the parties to the particular controversy, may be reviewed without awaiting the determination of the general litigation." See also Janssen v. Belding-Corticelli, 3 Cir., 84 F.2d 577; Stokes v. Williams, 3 Cir., 226 F. 148, certiorari denied 241 U.S. 681, 36 S.Ct. 728, 60 L.Ed. 1234; Pennsylvania Co. for Insurances on Lives and Granting Annuities v. Philadelphia Co., 3 Cir., 266 F. 1. See also 10 Cyc.Fed.Procedure, 2nd Edition, 1943, p. 231.

The nature of the instant controversy and that of the main action in the case at bar leaves no doubt that Beneficial's application for security is collateral. The corporation seeks to enforce its own right under the statute against the plaintiff and intervener. Its interest in respect to security is adversary to that of the plaintiff and of the intervener. The individual defendants, real parties in interest in the main action, are not involved directly in the controversy as to the giving of security and cannot be affected legally by its determination. In at least two decisions the Supreme Court has come very close to the position asserted by Beneficial. In Trustees v. Greenough, 105 U.S. 527, 531, 26 L.Ed. 1157, the Court held that an order awarding expenses and counsel fees to the plaintiff in a representative bondholder's suit was appealable. In the more recent case of Sprague v. Ticonic Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184, the Court took the position that an issue respecting the allowance of counsel fees and expenses was separate and distinct from the main litigation, outside the original decree of the trial court and the scope of the appellate mandates, and, treating an order denying counsel fees and expenses as appealable, passed upon the merit of the application.

We are not unmindful of the provisions of R.S. 14:3–15 which state that the corporation "at any stage of the proceeding" may make application for security but the court below deemed the statute inapplicable in the instant case at any time. It follows therefore that without the right to sustain an appeal Beneficial could never gain the security to which it is entitled if the statute is applicable for a writ of man-

damus could issue from this court only in aid of its appellate jurisdiction. See 28 U.S.C.A. § 1651, and United States ex rel. Potts v. Rabb, 3 Cir., 147 F.2d 225, certiorari denied 324 U.S. 870, 65 S.Ct. 1013, 89 L.Ed. 1424. If the order of the court below is not appealable we would not have the right to issue the writ since insofar as the instant litigation is concerned this court would have no appellate jurisdiction to protect.

We hold the order to be appealable.

### The Right Created by the New Jersey Statute and the Conflict of Laws.

Beneficial is a Delaware corporation. The law of Delaware is, of course, determinative of the liability of the officers and directors to the corporation and that of the corporation to its officers. Gallup v. Caldwell, 3 Cir., 120 F.2d 90. On March 31, 1941, Article X of the By-Laws was adopted by the vote of Beneficial's stockholders which, as we have stated, provides for the indemnification by the corporation of directors and officers against any claim or liability to which any of them might become subject by reason of his office. Indemnification is restricted, however, to claims or demands not arising because of the director's or officer's negligence or wilful misconduct. See note 1 supra. Article X finds sanction in Section 2(10) of the Delaware Corporation Law, 44 Delaware Laws, c. 125, Section 1, p. 442. The by-law was couched in the terms of the Delaware statute subsequently enacted.

The law of Delaware is important in the instant case only because it authorizes Beneficial to indemnify the defendants in the instant case if the plaintiff cannot maintain her cause of action. No substantial conflict-of-laws question appears under the circumstances for the obligation of indemnification created by Article X under the Delaware law would be enforceable against Beneficial in any State. The right of the officers and directors of Beneficial to indemnification under the by-law is analo-

gous to a contract right. While a district court of the United States is compelled in diversity cases to follow the rule of law prevailing in the State in which the court sits, Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, and Jackman v. Equitable Life Assurance Society, 3 Cir., 145 F.2d 945, we entertain no doubt that a State court of New Jersey would enforce freely and fully any liability arising under the contract. R.S. 14:3–15 simply provides a means whereby the corporation may recoup any losses which it may have sustained by reason of the indemnification of its directors or officers.

The Legislature of New Jersey in enacting the statute intended to prevent losses to both domestic and foreign corporations and to their stockholders by unjustified[3] litigation. We think that it is enough to state now that we can perceive no dichotomy between the laws of New Jersey and Delaware which would permit the plaintiff or the intervener to escape the impact of R.S. 14:3–15, if it is otherwise applicable.

### The Public Policy of the State of New Jersey as Embodied in R.S. 14:3–15, N.J.S.A.

It is clear that R.S. 14:3–15 embodies an important public policy of the State of New Jersey and represents an exercise of the police power of that State. The Legislature of New Jersey by enacting the statute intended to prevent losses to both foreign and domestic corporations and their stockholders by "strike" suits. This view was expressed by Governor Walter E. Edge when he approved the Act.[4] He pointed out that the statute's purpose was "to deter the filing of irresponsible suits by persons who either have no legitimate cause of action or who institute such action more for the personal gain of a settlement out of court than in the interest of the corporation or its stockholders. These suits involving the highly complicated transactions of modern corporate business are very cost-

---

[3] We desire to make it plain that in using this adjective we do not refer to the suit at bar. We are speaking in general terms of the intent of the New Jersey Legislature.

[4] See "Governor's Press Releases of 1945," p. 317, retained in The State House at Trenton, or, Newark Evening News, Suburban Ed., April 12, 1945, p. 20, column 1.

ly to defend, regardless of whether or not they may be justifiable. For this reason they have been the subject of great abuse and have been used to harass corporate officers and directors with baseless litigation. * * * It is a minimum protection for corporations and their officers and directors, against 'strike suits' * * *." A statement similar in tenor was attached to Assembly Bill No. 242, which became the Act under consideration, introduced by Assemblyman W. H. Jones in the House of Assembly on March 16, 1945. Governor Thomas E. Dewey of New York made a substantially similar statement with regard to the New York Act, now Section 61-b of the General Corporation Law of New York, Consol.Laws, c. 23. Governor Dewey said, "* * * many suits that were well based have been brought, not in the interest of the corporation or of its stockholders, but in order to obtain money for particular individuals who had no interest in the corporation or in its stockholders. Secret settlements—really payoffs for silence—have been the subjects of common suspicion." [5] The New York statute is almost identical with that of New Jersey. See as cited in note 17 infra.

The Application of R.S. 14:3–15, N.J. S.A., in the Case at Bar, So-Called "Retroactive" Provisions Aside.

Without regard to the question whether the New Jersey statute creates a substantive right or is merely remedial we conclude that the statute is applicable in the case at bar, the so-called "retroactive" effect of R.S. 14:3–17 aside,[6] because it states an important public policy of the State of New Jersey. The way to our conclusion was pointed out by the Supreme Court in People of Sioux County, Neb. v. National Surety Co., 1928, 276 U.S. 238, 48 S.Ct. 239, 72 L.Ed. 547. The principle of the Sioux County case was strengthened by Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and by Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462,

as exemplified by Guaranty Trust Company of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231, culminating perhaps [7] in Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832.

In the Sioux County case the Supreme Court held that a Nebraska statute which provided that in actions on guarantees and specified insurance contracts an attorney's fee should be [276 U.S. 238, 48 S.Ct. 240] "taxed as part of the costs", was to be given effect in a federal court in a suit against a guarantor. The guarantee had been entered into after the Nebraska Act, Neb.Comp.Stat.1922, § 7811, had been passed. The Supreme Court of Nebraska in Nye-Schneider-Fowler Co. v. Bridges, Hoye & Co., 98 Neb. 863, 155 N.W. 235, a suit on an insurance contract entered into apparently before the statute's enactment, designated the Nebraska Act as "remedial" or as a "costs" statute thereby avoiding the impact of the Contract Clause. At page 867 of 98 Neb., at pages 236, 237, of 155 N.W. the Supreme Court of Nebraska stated: "If the question that we are considering was now presented for the first time, we would hesitate to say that this statute does not create and add to the contract a legal liability which would not exist under the contract prior to the enactment of this statute. The fact that the attorney's fee is to be taxed as costs in the case is not of itself decisive of the question." In the Sioux County case Mr. Justice Stone, after quoting the foregoing statement of the Nebraska Supreme Court, went on to say: "But the question before the Nebraska court in the cases cited was not that with which we are now concerned. Whether this liability for an attorney's fee, assumed by entering into an insurance contract after the enactment of the statute providing for the liability, may be enforced in the federal courts does not depend on any nice distinctions which may be taken between the right created and the remedy given. Disregarding mere matters of form it is clear that *it is the policy of the state*

---

[5] See New York Times, March 9, 1945.
[6] The alleged retroactive effect of the statute is dealt with at a later point in

this opinion. See R.S. § 14:3–17, N.J. S.A. 14:3–17.
[7] We use this word because we think the end is not yet.

to allow plaintiffs to recover an attorney's fee in certain cases, and it has made that policy effective by making the allowance of the fee mandatory on its courts in those cases. It would be at least anomalous if this policy could be thwarted and the right so plainly given destroyed by removal of the cause to the federal courts."

In Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the Supreme Court laid down the fundamental principle, overruling the doctrine of Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865, and depreciating the rule of law which sanctioned different results in litigation if tried in a federal court as distinguished from a State tribunal, and concluded that, except where the Federal Constitution or Acts of Congress required otherwise, the law to be applied in any case is the law of the State. Mr. Justice Brandeis, Id., 304 U.S. 64, at page 71, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, referred to the Rules of Decision Act, 28 U.S.C.A. § 725,[8] as determining the question whether the Pennsylvania rule of law which imposed liability on the owner of premises only for wilful and wanton injury to a trespasser was applicable. There would be little profit in discussing in this opinion whether the Pennsylvania rule was one of substance or went only to the remedy but using the ancient tests we may conclude that the rule of law was probably "substantive" in its nature as that quoted term has been usually employed. We think it must be gathered from Erie R. Co. v. Tompkins, supra, that the Supreme Court required district courts of the United States to stand bound upon the public policy of the individual States as declared by the decisions of the State courts. Erie R. Co. v. Tompkins, supra, declared a major doctrine of constitutional law.

In Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462, after citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477, for the proposition that the rules of conflict of laws governing a federal court in diversity cases are those of the State in which the federal court sits, the Supreme Court held that the public policy of Texas as to the existence or non-existence of an insurable interest under a life insurance contract must be determined by the Texas decisions, the courts of the United States being compelled to effect the law of Texas in this respect. This decision stems clearly from Erie R. Co. v. Tompkins, supra.

In Guaranty Trust Company of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231, the Supreme Court indicated that that doctrine of constitutional law, expressed in the Erie R. Co. case and in Griffin v. McCoach, supra, implicit in the Sioux County decision, required federal courts sitting in diversity cases to apply any statute of a State which might effect a substantial difference in the respective rights or statuses of the parties. In short, the Court ruled that the litigant who comes into a federal court should have the substantial rights which he would have in a State tribunal. There was qualification to this principle but it is not pertinent here.[9] It should be borne in mind that in the Guaranty Trust Company case the question before the Supreme Court was whether a statute of limitations of New York should operate to bar the plaintiff's suit. We venture to suggest that prior to this decision few members of the bar had doubted that a statute of limitations was procedural and not substantive. But the Supreme Court required the New York statute to be applied by a district court sitting in equity despite the fact that the jurisdiction of district courts of the United States so sitting traditionally had corresponded to that of the English Court of Chancery. Michoud v. Girod, 4 How. 503, 561, 11 L.Ed. 1076. Mr. Justice Frankfurter said Id., 326 U.S. at page 108, 65 S.Ct. at page 1469: "* * * since a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the

---

[8] In 1948 Revision, 28 U.S.C.A. § 1652.

[9] See Guaranty Trust Co. of New York v. York, 326 U.S. 99, at page 105, 65 S. Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231, quoted by the court below in its opinion, 7 F.R.D. at page 355.

State nor can it substantially affect the enforcement of the right as given by the State. And so the question is not whether a statute of limitations is deemed a matter of 'procedure' in some sense. The question is whether such a statute concerns merely the manner and the means by which a right to recover, as recognized by the State, is enforced, or whether such statutory limitation is a matter of substance in the aspect that alone is relevant to our problem, namely, does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court? It is therefore immaterial whether statutes of limitation are characterized either as 'substantive' or 'procedural' in State court opinions in any use of those terms unrelated to the specific issue before us. Erie R. Co. v. Tompkins [supra], was not an endeavor to formulate scientific legal terminology. It expressed a policy that touches vitally the proper distribution of judicial power between State and federal courts. In essence, *the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.*" Any statute of limitations declares a public policy of a State to set a period after which suits may not be brought.

Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832, again makes plain the insistence of the Supreme Court that a federal court sitting in a diversity suit must enforce State law and State policy. In the Angel case a statute of North Carolina, c. 36, Public Laws 1933, Michie's Code, § 2593, precluded recovery of a deficiency judgment in North Carolina for unpaid notes secured by a mortgage. The Supreme Court of North Carolina, 220 N.C. 18, 20, 16 S.E.2d 411, 412, 136 A.L.R. 1054, had held that "The statute operates upon the adjective law of the state, which pertains to the practice and procedure, or legal machinery by which the substantive law is made effective, and not upon the substantive law itself. It is a limitation of the jurisdiction of the courts of this state." Bullington did not appeal the decision to the Supreme Court of the United States but brought a new action for a deficiency judgment in the District Court of the United States for the Western District of North Carolina. He recovered judgment, the decision being affirmed, 4 Cir., 150 F.2d 679. The Supreme Court of the United States, reversing, stated that it was necessary for the federal courts in diversity cases to give effect to the public policy of the States. Mr. Justice Frankfurter said 330 U.S. at page 191, 67 S.Ct. at page 661 "It is suggested that the North Carolina Supreme Court construed the North Carolina statute to close only the North Carolina State courts but not the federal court sitting in North Carolina. In the first place, the North Carolina Supreme Court said no such thing. It construed the statute expressive of State policy and spoke only of the jurisdiction of the State courts because it was concerned only with the State courts. Secondly, it is most incongruous to attribute to the legislature and judiciary of North Carolina the imposition of a restriction against all its citizens from suing for a deficiency judgment, while impliedly authorizing citizens of other States to secure such deficiency judgments against North Carolinians. Thirdly, a North Carolina statute, upheld by the highest court of North Carolina, is of course expressive of North Carolina policy. *The essence of diversity jurisdiction is that a federal court enforces State law and State policy.* If North Carolina has authoritatively announced that deficiency judgments cannot be secured within its borders, it contradicts the presuppositions of diversity jurisdiction for a federal court in that State to give such a deficiency judgment. North Carolina would hardly allow defeat of a State-wide policy through occasional suits in a federal court. What is more important, diversity jurisdiction must follow State law and policy. A federal court in North Carolina, when invoked on grounds of diversity of citizenship, cannot give that which North Carolina has withheld. Avail-

ability of diversity jurisdiction which was put into the Constitution so as to prevent discrimination against outsiders is not to effect discrimination against the great body of local citizens."

Now it must be conceded in the case at bar that the right to security given to Beneficial by R.S. 14:3-15 is not a part of and is legally unconnected with the causes of action asserted by the plaintiff against the individual defendants for the benefit of the corporate defendant. It is as if a little cause of action had been engrafted on the body of the main suit for the benefit of the corporation. There can be no doubt, however, that the New Jersey statute imposes a limitation on the right of the plaintiff to maintain her suit. R.S. 14:3-15 is a kind of legal hybrid, functioning both by way of limitation and creation. It is in some respects an extension of the New Jersey Chancery Act, R.S. 2:29-131, N.J.S.A. 2:29-131, which gives a right to the Court of Chancery of New Jersey to award counsel fees and costs as between party and party, but as was pointed out by Chief Judge Lehman in Shielcrawt v. Moffett, 294 N.Y. 180, 190, 61 N.E.2d 435, 440, 159 A.L.R. 971, in construing Section 61-b of the General Corporation Law of New York,[10] upon which R.S. 14:3-15 was patterned, "* * * the statute [61-b] creates a remedy for a wrong for which previously there was no remedy, and it interferes with the antecedent right of small stockholders to maintain derivative actions in behalf of the corporation and gives to corporations rights which they had not previously enjoyed."[11]

But the exact nature of the right given to a corporation need not be determined on this aspect of the case for it is clear that it is a substantial one[12] and that it embodies the public policy of New Jersey. The question for our determination therefore is: Putting the so-called "retroactive" application of R.S. 14:3-15 aside, can the plaintiff by coming into the District Court of the United States for the District of New Jersey avoid a limitation upon her action which she would be subjected to had she filed suit in the Court of Chancery of New Jersey? In short, can she escape the limitation of the New Jersey statute by entering the federal court house rather than that of the State? We think the answer must be in the negative.[13]

If this be a limitation on the jurisdiction of the District Court of the United States for the District of New Jersey it is none the worse for so being. In Angel v. Bullington, supra, the Supreme Court by requiring the District Court of the United States for the Western District of North Carolina to give full effect to the North Carolina statute imposed a limitation upon the jurisdiction of that court and expressly declared, 330 U.S. at page 192, 67 S.Ct. at page 662, "Cases like David Lupton's Sons Co. v. Automobile Club, 225 U.S. 489, 32 S.Ct. 711, 56 L.Ed. 1177, Ann.Cas.1914A, 699, are obsolete insofar as they are based on a view of diversity jurisdiction which came to an end with Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487. That decision drastically limited the power of federal district courts to entertain suits in diversity cases that could not be brought in the

---

[10] See Sections 61-b, 64 and 67 of the General Corporation Law of the State of New York, McKinney's Consolidated Laws of New York Ann., Book 22, 1948 Supp.

[11] We shall deal at somewhat greater length with the nature of the right given to Beneficial at that point of this opinion which discusses the so-called "retroactive" effect of the statute under R.S. 14:3-17, N.J.S.A. 14:3-17.

[12] Beneficial alleges that the costs and counsel fees for which it will be liable will amount to $125,000. Though this estimate may well be taken with salt we entertain no doubt that the amount

involved will be large. It will be the duty of the court below on remand to determine the proper amount of the security to be given.

[13] We are aware that our decision is contrary in substance to that of Aspinook Corporation v. Bright, 2 Cir., 165 F.2d 294, and directly contrary to decisions such as Boyd v. Bell, D.C.S.D.N.Y., 64 F.Supp. 22, and the other authorities cited to the point in 165 F.2d at page 295. Cf. Donovan v. Queensboro Corporation, D.C.E.D.N.Y., 75 F.Supp. 131. While these decisions are entitled to great weight we cannot follow them.

respective State courts or were barred by defenses controlling in the State courts."

In view of what has been said we deem it unnecessary to comment at length on Pusey & Jones Co. v. Hanssen, 261 U.S. 491, 497, 43 S.Ct. 454, 67 L.Ed. 763, relied on in the opinion of the court below. In that case, as is pointed out in note 3 to the opinion in Guaranty Trust Co. of New York v. York, cited to the text at 326 U.S. 99, at page 106, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231, the Supreme Court had to decide whether a Delaware statute, Revised Code of Delaware 1915, Section 3883, had created a new right appropriate for enforcement in accordance with traditional equity practice or whether the Act had given the Chancery Court of Delaware a new kind of remedy. The Supreme Court held that the Delaware statute was remedial and did not create a new interest in a simple contract creditor as distinguished from a secured creditor, applying for a receiver for an insolvent Delaware corporation. With words as cold and sharp as the point of a scalpel the late Chancellor Wolcott cut the ligatures which bound the Hanssen case to the law of Delaware. See Mackenzie Oil Co. v. Omar Oil & Gas Co., 14 Del.Ch. 36, 45, 120 A. 852, 856. But despite the note referred to in Guaranty Trust Co. of New York v. York, supra, we cannot say that the decision in the Hanssen case retains its full potency in the courts of the United States. If, as we have decided, we may not concern ourselves in the case at bar with the ancient diversities between adjective and substantive law, the Hanssen case must be by-passed. If it is to be overruled, it must be by the Supreme Court. The Hanssen case in view of the authorities previously cited may by 1948 have become a signpost on a one-way street leading ultimately to that legal border where substance and procedure will become in law, as in fact, one.

We can perceive no reason why the provisions of R.S. 14:3–15 should not be as fully operative in respect to a suit against a foreign corporation, such as Beneficial, as in a suit against a New Jersey corporation. It is the express policy of R. S. 14:3–15 to protect foreign as well as domestic corporations. The fact that Delaware has no statute corresponding to those of New Jersey and New York is immaterial.[14] The New Jersey statute finds its vitality in the District Court of New Jersey by reason of the Rules of Decision Act and the decisions of the Supreme Court in interpreting that Act from the Sioux County case to Angel v. Bullington, supra.

The point set up in the able opinion of the court below, 7 F.R.D. at page 356, that R.S. §§ 823, 824, 28 U.S.C.A. §§ 571, 572,[15] prohibits the allowance of the expenses contemplated by the New Jersey statute (for which security is to be required) is fully answered by the Sioux County case, 276 U.S. 238, at page 244, 48 S.Ct. 239, 72 L.Ed. 547. In the cited case it was held that counsel fees under the Nebraska statute though allowed and "taxed as part of the costs" were not costs in the ordinary sense and not taxable as costs under R.S. §§ 823, 824 in the federal court.

As to Constitutionality Generally, and as to the So-Called Retroactive Application of the New Jersey Statute.

It cannot be seriously contended that R.S. 14:3–15 would be unconstitutional as applied to any suit commenced after the date of its approval. The substantial question raised on this appeal on this aspect of the case is, we think, answered fully and clearly by the decision of Chief Judge Loughran in Lapchak v. Baker, 298 N.Y. 89, 80 N.E.2d 751, dealing with the constitutionality of Section 61-b of the General Corporation Law of New York. The contrary view is succinctly presented by Zlinkoff in his virile article entitled "The American Investor and the Constitutionality of Section 61-b of the

---

[14] It should be pointed out again, as stated at an earlier point in this opinion, that Article X finds full support in Section 2(10) of the Delaware Corporation Law. If the plaintiff's suit is unsuccessful, Beneficial will be liable for the individual defendants' counsel fees and costs. It is clear that the public policy of New Jersey as embodied in R.S. 14:-3–15, N.J.S.A., is in nowise inconsistent with that of Delaware as disclosed in Section 2(10) of the Delaware Corporation Law.

[15] In 1948 Revision, 28 U.S.C.A. § 1923.

New York General Corporation Law." 54 Yale L.J. pp. 352–392. The learned writer, relying on the Due Process Clause, asserts Id., 80 N.E.2d at pages 374 et seq. that the operation of Section 61-b "* * * will deprive a great majority of stockholders of the only available judicial remedy for the protection of their rights", by requiring security from them in an amount which they cannot produce. But R.S. 14:3–15 requires "security for the *reasonable* expenses, including counsel fees, which may be incurred" by the corporation and by other parties defendant. The statute also provides that the amount of the security required by the court may be increased or decreased from time to time as it may become "inadequate" or excessive". It is clear, we think, that the last two adjectives quoted must be read in connection with the adjective "reasonable" italicized above. In other words the test is the amount of the expenses reasonably to be anticipated rather than the extent or capacity of the plaintiff's pocketbook. But the amount of the security to be required by the trial court is not presently before us. No amount of security was set by the court below for the reason that it was of the opinion that the statute was inapplicable. Any question relating to the amount of the security is still in nubibus and we cannot pass upon it in the absence of an order based on appropriate findings by the court below. An analogy is presented by the extent of the review in the Lapchak case. See the last sentence of the seventh paragraph of the opinion of the Court of Appeals of New York.

In conclusion upon this point we point out that it is not the duty of a court to pass upon the wisdom of a public policy effected by a legislature. Much of the plaintiff's and intervener's argument as well as that of the Zlinkoff article is addressed to the wisdom of statutes such as that sub judice. It is pointed out by the latter that Section 61-b does not meet the worst feature of the groundless "strike" suit in that the statute does not prohibit secret settlements. This is true also of R.S. 14:3–15. But the

Legislatures of the States are in a very real sense laboratories for legislation and early experiments are rarely perfect. We may inquire as did the Supreme Court of the United States by Mr. Justice Roberts in Nebbia v. New York, 291 U.S. 502, 515, 54 S.Ct. 505, 507, 78 L.Ed. 940, 89 A.L.R. 1469, into "the occasion for the legislation and its history." We did this under the previous heading of this opinion. But we think that it cannot be asserted fairly that the provisions of R.S. 14:3–15 do not represent a reasonable effort by New Jersey to eradicate an evil deemed by its Legislature to be widespread. We may not hold the statute unconstitutional on the showing made by the plaintiff and intervener.

As to the so-called retroactive application of R.S. 14:3–15, 14:3–17 provides that the effective date of R.S. 14:3–15 should be immediately upon its approval, viz., on April 10, 1945, "and [that R.S. 14:3–15] shall apply to all such actions, suits or proceedings now pending in which no final judgment has been entered, and to all future actions, suits or proceedings." The suit at bar was filed on August 9, 1943 and Beneficial's application for security under the Act was not filed until August 5, 1946. We agree with those portions of the opinion of the learned District Judge, 7 F.R.D. at pages 355-357, which hold that the right given by R.S. 14:3–15 is largely remedial, though, as we have stated, the right is actually a hybrid. The view that a statute of the character of R.S. 14:3–15 is somewhat remedial in nature was expressed by the Court of Appeals of New York by Chief Judge Lehman in Shielcrawt v. Moffett, supra, though that Court did not pass upon the question of whether Section 61-b of the General Corporation Law of New York applied retroactively would be constitutional.[16] The plaintiff and the intervener contend that the application of the New Jersey statute to the suit at bar would abridge the equity jurisdiction of the Court of Chancery in violation of Article VI, Section 1, of the New

---

16 The New York Legislature omitted the formula embodied in R.S. 14:3–17 and quoted in the paragraph of the opinion to which this note is cited. The Court of Appeals of New York held that since the New York statute omitted that formula the Legislature did not intend that Section 61-b should be applied to a stockholder's derivative suit pending at the time of its approval.

Jersey Constitution, N.J.S.A., citing Ex parte Hague, 104 N.J.Eq. 31, 144 A. 546, affirmed 104 N.J.Eq. 369, 145 A. 618, and other authorities including Eastwood Nealley-Corp. v. International Ass'n of Machinists Dist. No. 47, 124 N.J.Eq. 274, 1 A.2d 477.

We cannot agree. The court below, quite properly, as we think, treated R.S. 14:3-15 as an extension in principle of the provisions of the New Jersey Chancery Act, in pertinent part embodied in R.S. 2:29-131, by which the Court of Chancery of New Jersey is empowered to award counsel fees and costs as between party and party. If we are correct in this conclusion it is clear that no provision of the Constitution of New Jersey will be violated by applying the provisions of the statute to the instant suit. The Courts of New Jersey, including the Court of Errors and Appeals, have held that statutes creating a right to counsel fees "as part of the taxable costs" may be applied to pending actions. See Igoe Bros. v. National Surety Co., 112 N.J.L. 243, 169 A. 841, 96 A.L.R. 1422; Robinson v. Jackson, Ct.Com.Pleas, 187 A. 918, 14 N.J.Misc. 866; and Murphy v. George Brown & Co., Sup., 91 N.J.L. 412, 103 A. 28. True, these decisions are based upon the proposition that such statutes are remedial only but nonetheless the decisions cited are clear rulings to the effect that no provision of the New Jersey Constitution is violated. Interpretations of the New Jersey Constitution by the courts of New Jersey are binding on us on this point of the instant case. By analogy, we are forced to the conclusion that the courts of New Jersey would also hold that the application of the statute sub judice, even to suits pending at the time of its approval, would violate no provision of the Constitution of New Jersey.

In so stating we are aware that a right beyond that given by the pertinent section of the Chancery Act, R.S. 2:29-131, is awarded to corporations by R.S. 14:3-15. The pertinent provisions of the Chancery Act state that the Chancellor may make an allowance by way of counsel fee "to the party obtaining the order or decree". Assuming that a decree in favor of the plaintiff against the individual defendants awarding a sum of money to Beneficial might be deemed to be a decree "obtained" by it, (and even to state such an assumption is in reality to refute it) Beneficial under R.S. 2:29-131 could obtain only its own counsel fees and expenses and could secure no indemnification whatsoever for sums expended by it to pay the counsel fees and expenses of the individual defendants. But the remedy or right conferred on corporations by R.S. 14:3-15 clearly proceeds along the same general lines of indemnification as those laid down by R.S. 2:29-131 of the Chancery Act. We are of the opinion that no clear-cut and effective distinction in principle between R.S. 14:3-15 and R.S. 2:29-131 is possible.[17]

The plaintiff and intervener also contend that R.S. 14:3-15 violates the Contract Clause of the Federal Constitution, art. 1, § 10, cl. 1. But the right of a stockholder to prosecute a derivative action is not a contractual right. We know of no Delaware decision which suggests even remotely that a stockholder's derivative suit is based upon breach of contract. The right of a stockholder of a Delaware corporation to maintain a derivative suit on behalf of the corporation is based upon a breach of fiduciary duty by the directors or officers of the corporation. The officers and directors of a Delaware corporation are trustees for its stockholders under Delaware law. Lofland v. Cahall, 13 Del. Ch. 384, 118 A. 1; Bodell v. General Gas & Electric Corp., 15 Del.Ch. 119, 132 A.

---

[17] Compare Section 61-a of the General Corporation Law of New York with Section 61-b, and Section 61-b with R.S. 2:29-131 and 14:3-15. Section 61-a provides that in any action, suit or proceeding against one or more officers or directors of a corporation "brought by the corporation, or brought in its behalf * * * by one or more stockholders * * * the reasonable expenses, including attorneys fees, of any party plaintiff or party defendant incurred in connection with the successful prosecution or defense of such action, suit or proceeding shall be assessed upon the corporation."

The two sections of the General Corporation Law of New York and the two sections of the New Jersey law operate in a similar field.

442. Cf. Irving Trust Co. v. Deutsch, 2 Cir., 73 F.2d 121. The cases cited by the plaintiff and intervener as sustaining their position are inapposite.

We conclude also that the application of R.S. 14:3–15 to the suit at bar will not fall within the prohibition of the Fourteenth Amendment of the Constitution of the United States. The remedy selected by the New Jersey Legislature was reasonable in view of the evil which the Legislature has sought to cure. The plaintiff is not deprived of her cause of action by the New Jersey statute and she may assert her remedy subject to a reasonable condition. The right to bring a stockholder's derivative suit is not a property right and as this court held in Overfield v. Pennroad Corporation, 3 Cir., 146 F.2d 889, 894, quoting 4 Pomeroy § 1095, the individual stockholder is permitted to sue "simply in order to set in motion the judicial machinery of the court." As was said by the Supreme Court in Klein v. Board of Tax Supervisors, 282 U.S. 19, 24, 51 S.Ct. 15, 16, 75 L.Ed. 140, 73 A.L.R. 679, "* * * it leads nowhere to call a corporation a fiction. * * * The corporation is a person and its ownership is a nonconductor that makes it impossible to attribute an interest in its property to its members." A stockholder's suit is a suit by the corporation conducted by the stockholder as its representative. Fletcher Cyclopedia Corporations (Perm.Ed.1943, Rev. Vol., § 5939). In Jones v. Union Guano Co., 264 U.S. 171, 181, 44 S.Ct. 280, 282, 68 L.Ed. 623, the Supreme Court said, "The Fourteenth Amendment does not prevent a state from prescribing a reasonable and appropriate condition precedent to the bringing of a suit of a specified kind or class so long as the basis of distinction is real, and the condition imposed has reasonable relation to a legitimate object." While it is true that in the cited case the State statute, Section 7, c. 143, Laws of North Carolina of 1917, which prohibited a suit being brought for alleged defective fertilizer until after chemical analysis showing

its ingredients had been made, was enacted prior to the time that the plaintiff commenced his suit, the principle stated is nonetheless applicable here. Although R. S. 14:3–15 and 14:3–17 did create a limitation on the right of the plaintiff to maintain the suit at bar it is a reasonable limitation when one considers the nature of the evil attempted to be cured. Moreover, the limitation imposed by the statutes does not run to the plaintiff's right to maintain her suit which remains legally unimpaired. On this aspect of the case as we have stated the New Jersey statutes are largely procedural and remedial, rather than substantive. Last, the mere fact that a statute is retroactive does not render it unconstitutional. Blount v. Windley, 95 U.S. 173, 180, 24 L.Ed. 424; Western Union Telegraph Co. v. Louisville & N. R. Co., 258 U.S. 13, 42 S.Ct. 258, 66 L.Ed. 437; cf. United States ex rel. Rodriguez v. Weekly Publications, Inc., 2 Cir., 144 F.2d 186.

We conclude that the application of R.S. 14:3–15 to the instant suit is constitutional.

### As to the Application of the Act to the Suit at Bar.

We should point out, though the question is not immediately before us, that the wording of R. S. 14:3–15 leaves no discretion in the court below to require security of the plaintiff or the intervener. The only discretion conferred on the court by R.S. 14:3–15 is as to the *amount* of the security and of the subsequent reimbursement. The Act provides that the corporation "shall be entitled * * * to require the complainant * * * to give security * * *, to which the corporation shall have recourse in such amount as the court * * * shall determine * * *." This interpretation is in accord with that given to the New York statute, Section 61-b, which as has been observed is almost identical in terms with the New Jersey Act. See Isensee v. Long Island Motion Picture Co., 184 Misc. 625, 54 N.Y.S.2d 556, and Shielcrawt v. Moffett, 294 N.Y. at page 187, 61 N.E.2d at 438.[18] The courts of

---

[18] Judge Lehman said, "* * * if the defendants succeed in their defense, the corporation * * * will be subject to liability for expenses of substantial amount incurred not only by itself but also by the individual defendants; and the corporation will have no recourse to the defeated plaintiffs for indemnity or

New Jersey will find the interpretation of Section 61-b by the New York courts to be persuasive in construing R.S. 14:3–15. See In re Cook's Estate, 118 N.J.Eq. 288, 291, 179 A. 259, 260.[19]

The remaining points raised by the parties do not require discussion.

Our decision makes it unnecessary for this court to pass upon Beneficial's application for mandamus or certiorari. Consequently an order will be entered at No. 9558 dismissing the petition. An order will be entered at No. 9567 reversing the order of the court below and remanding the cause with the direction to proceed in accordance with this opinion.

reimbursement unless it is entitled to require the plaintiffs to give security as provided in section 61-b."

[19] The Court of Errors and Appeals said, " * * * when it is clear * * * that the legislation is but the enactment in this state of the law of another state or country, the interpretation as given in the place from which it is taken will be presumed to be that intended by the Legislature of our own state in so adopting it."